## PEOPLE v CRAWFORD

Docket No. 104696. Argued November 4, 1997 (Calendar No. 1). Decided
July 28, 1998.

Douglas L. Crawford was convicted by a jury in the Oakland Circuit
Court, Gene Schnelz, J., of possession with intent to deliver 50 to
225 grams of cocaine. The Court of Appeals, HOEKSTRA, P.J., and
WAHLS and G. S. BUTH, JJ., affirmed in an unpublished memorandum
opinion, holding that under *People v Mouat*, 194 Mich App 482
(1992), the trial court did not abuse its discretion in admitting evi-
dence of a prior conviction of cocaine delivery (Docket No.
165956). The defendant appeals.

In an opinion by Justice BRICKLEY, joined by Chief Justice
MALLETT, and Justices CAVANAGH and KELLY, the Supreme Court *held*:

Evidence of the defendant's prior conviction was improperly
admitted because the prosecution failed to establish a proper pur-
pose under MRE 404(b).

1. Generally, evidence of other crimes, wrongs, or acts is inad-
missible to prove a propensity to commit such acts. Such evidence
may be admissible for other purposes, however. The touchstone of
the admissibility of prior acts evidence is logical relevance, as
determined by the application of MRE 401 and 402. Evidence is rel-
evant if it is material and probative. It is material if it is related to
any fact that is of consequence to the action. Probative force is the
tendency to make the existence of any fact that is of consequence
to the action more probable or less probable than it would be with-
out the evidence. The threshold is minimal: Any tendency is suffi-
cient probative force. However, the proffered evidence truly must
be probative of something other than the defendant's propensity to
commit the crime. If the prosecutor fails to weave a logical thread
linking the prior act to the ultimate inference, the evidence must be
excluded, notwithstanding its logical relevance to character.

2. To establish the probativeness of the evidence, the prosecutor
invokes the doctrine of chances, which posits that the more often
the defendant commits an actus reus, the less is the likelihood that
the defendant acted accidentally or innocently, and, thus, the for-
bidden intermediate inference to defendant's subjective character is
not implicated. The applicability of the doctrine of chances

depends on the similarity between the defendant's prior conviction and the crime charged.

3. In this case, there is an insufficient factual nexus between the prior conviction and the present charged offense to warrant admission of the evidence under the doctrine of chances. The factual relationship between the 1988 crime and the charged offense was simply too remote for the jury to draw a permissible intermediate inference of the defendant's mens rea. The prior conviction only demonstrates that the defendant has been around drugs in the past and, thus, is the kind of person who would knowingly possess and intend to deliver large amounts of cocaine. To the extent that the 1988 conviction is logically relevant to show that the defendant was also a drug dealer in 1992, it does so solely by way of the forbidden intermediate inference of bad character that is specifically prohibited by MRE 404(b). The defendant's prior conviction was mere character evidence masquerading as evidence of knowledge and intent. Thus, the trial court abused its discretion in admitting evidence of the defendant's prior conviction. Further, under MRE 403 the danger of unfair prejudice substantially outweighed whatever marginal probative value admission of the evidence might have had. Therefore, the error was not harmless.

Reversed and remanded.

Justice BOYLE, joined by Justices WEAVER and TAYLOR, dissenting, stated that bad acts evidence universally is precluded only when it is used to establish the character of a person to prove that the person acted in conformity with it. The prohibition comes into play only when the plaintiff or prosecutor uses character intermediate to an ultimate inference of conduct in conformity, and expressly prohibits only one theory of logical relevancy, i.e., if there is any other theory of logical relevance of prior misconduct, the evidence falls outside Rule 404(a). The evidence is admissible unless the opponent shows that the probative value is substantially outweighed by the potential for prejudice.

The majority rejects the inclusionary view of MRE 404(b) and imposes a heightened burden on the proponent by ignoring that Rule 404(b) incorporates Rule 403's balancing test that requires the opponent of the evidence to carry the burden of proving that the prejudicial danger substantially outweighs the probative value. It further imposes its judicial oversight on the trial bench, disregarding the deference due trial courts in admitting other acts evidence, and instead determines that there is an insufficient factual nexus between the prior conviction and the present charged offense. The majority fails to acknowledge that the structure and philosophy of the rules require only relevancy.

In this case, the prior conviction was relevant for the proper purposes of knowledge and intent, and the jury was instructed to limit the use of the evidence to these purposes. The trial court did not abuse its discretion in finding the evidence more probative than prejudicial. While the evidence was circumstantial, it was more than sufficient to show guilt beyond a reasonable doubt without the challenged testimony.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *David G. Gorcyca*, Prosecuting Attorney, *Richard H. Browne*, Chief, Appellate Division, and *John S. Pallas*, Assistant Prosecuting Attorney, for the people.

*Arthur James Rubiner* for the defendant.

Amicus Curiae:

*William A. Forsyth*, President, and *Timothy K. McMorrow*, Chief Appellate Attorney, for the Prosecuting Attorneys Association of Michigan.

BRICKLEY, J.

I

Douglas L. Crawford was convicted following a jury trial of possession with intent to deliver 50 to 225 grams of cocaine. MCL 333.7401(2)(a)(iii); MSA 14.15(7401)(2)(a)(iii). He claims error in the admission of evidence of his prior conviction for delivery of 225 to 650 grams and conspiracy to commit the same offense. Specifically, he contends that the evidence of his prior conviction should have been excluded under MRE 404(b) as improper evidence of his character or propensity to commit the charged offense. We agree that the defendant's prior conviction was improperly admitted in this case and that his conviction, therefore, should be reversed.

II

On September 22, 1992, Oak Park police officer Rene Gobeyn was patrolling Eight Mile Road. He noticed a man, later identified as the defendant, placing something in the trunk of a car in the parking lot of the Embassy Motel. The motel's reputation apparently caused Officer Gobeyn to suspect that criminal activity might be afoot.

Officer Gobeyn did not immediately confront the defendant, however. Instead, he watched as the car left the motel parking lot and headed west on Eight Mile Road. Gobeyn estimated that the car drove off at a speed in excess of the posted speed limit, and he tried to catch up in his patrol car. Before he could do so, he saw the defendant turn left at a "turn around lane" and head south on an intersecting street. There was a stop sign in the turn around lane, but the defendant did not heed it. Officer Gobeyn decided to stop the defendant for this violation.

On request, the defendant presented his driver's license, registration, and proof of insurance. Gobeyn returned to his patrol car to verify those documents. As Gobeyn sat in his patrol car, he observed the defendant leaning over to the passenger side of his car. All he could see was the top left portion of the defendant's shoulder. Fearing that the defendant might be reaching for a gun, Gobeyn radioed for backup assistance.

When a second officer arrived, the two ordered the defendant to get out of the car with his hands in plain view. A patdown search produced only a beeper. Gobeyn asked the defendant if there were any drugs or weapons in the vehicle. The defendant responded, "No, go ahead and look." While the second officer

detained the defendant outside, Gobeyn looked around the car's front-seat area, and found a jacket in which he found a plastic baggie that contained several smaller baggies. Gobeyn thought, and this was later confirmed by stipulation at trial, that the large baggie contained cocaine residue. Further, as Gobeyn was leaving the car, he noticed a box beneath the driver's seat. Inside the box he found a digital scale.

Gobeyn arrested the defendant on the basis of the discovery of the suspected cocaine residue in the baggie. Defendant was taken to the Oak Park police station and his car was towed and impounded there. An Oak Park police officer searched the defendant's car early the next morning and found a yellow baggie that contained more than one hundred grams of cocaine hidden in the dashboard adjacent to the glove compartment. A subsequent, more careful search, found another baggie with a smaller amount of cocaine in the same area.

Defendant was charged with possession with intent to deliver 50 to 225 grams of cocaine. Before trial, the prosecutor advised defense counsel by letter of his intent to introduce evidence of a prior drug crime on an MRE 404(b) "other bad acts" theory.[1] Defendant moved to suppress the evidence, citing *People v Golochowicz*, 413 Mich 298; 319 NW2d 518 (1982),[2]

---

[1] In 1988, events that predate this 1992 case, the defendant participated in the delivery of a pound of cocaine to an undercover Oakland County police officer. The defendant ultimately pleaded guilty of delivering 225 to 650 grams of cocaine and conspiracy to commit the same offense. These were his first adult or juvenile offenses. His arrest in the present case occurred ten months after he was paroled on November 12, 1991.

[2] The defendant's trial in this case predated *People v VanderVliet*, 444 Mich 52; 508 NW2d 114 (1993), in which we articulated a clarified standard for determining the admission of prior acts evidence under MRE 404(b).

arguing that it was irrelevant and that, if found to be relevant, it was unfairly prejudicial. In response, the prosecutor argued that the prior conviction was relevant to show defendant's knowledge of the presence of the cocaine and his intent to deliver it, and that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. The trial judge agreed and ruled that the prosecution could introduce evidence of defendant's prior conviction, and announced his intention to read a limiting instruction to cushion the prejudicial effect on the defendant.

A four-day jury trial was held on May 17-21, 1993. Officer Gobeyn described the circumstances surrounding the defendant's arrest. The officer who located the cocaine in the dashboard of the car described how he made that discovery.

Over defense objection, a third officer testified in great detail about the defendant's 1988 crime.[3] He testified that he had waited with a codefendant in that earlier case until the defendant and a codefendant appeared on the scene. He said that the defendant and the third man got out of their car and entered an apartment building. The defendant was carrying a distinctive plastic bag. After a few moments, the officer was invited into the apartment. Cocaine was taken from the bag and handed to the officer. After field testing it, the officer handed $5,000 to the defendant. He then gave a prearranged signal that brought in

---

[3] In an effort to preclude detailed testimony about the prior conviction, defense counsel offered at trial to stipulate to the prior conviction, as well as to the amounts and substance. The prosecutor persuaded the trial judge that the jury needed to hear the details of the prior crime in order to utilize MRE 404(b) properly. The suggested stipulation about the prior conviction also was read to the jury.

other officers to arrest all the participants. The defendant was discovered hiding in a bedroom closet.

The defendant did not testify, but his wife did. She said that both she and the defendant were employed. They were engaged but not yet married when the defendant was arrested. The defendant had been living in the Embassy Motel temporarily, after being evicted by a grandparent with whom he had been living. Further, she provided the testimonial basis for the defense theory that the defendant had been unaware of the cocaine hidden in the car's dashboard. She testified that she had never seen the defendant use or sell drugs. He had purchased the old car in which he was arrested just five to ten days before his arrest and had loaned the car to others during that time. She had ridden in the car, but had never noticed anything hanging down from behind the dashboard.

The only other defense witness was an Oak Park police officer who searched the glove compartment and trunk of the defendant's car while it was impounded. He found no incriminating evidence. The trunk contained several garbage bags full of men's clothing. His testimony, therefore, was consistent with the defense theory that the defendant had been residing at the Embassy Motel temporarily.

The jury found the defendant guilty as charged of possessing with intent to deliver 50 to 225 grams of cocaine. The trial judge imposed a mandatory life sentence without the possibility of parole on June 17, 1993. The Court of Appeals affirmed in an unpublished memorandum opinion, holding merely that under *People v Mouat*, 194 Mich App 482; 487 NW2d 494 (1992), "the trial court did not abuse its discretion in allowing the prosecution to present evidence of

prior convictions involving cocaine delivery where defendant's intent to deliver cocaine in the instant case was an issue."[4] The defendant has appealed to this Court. We reverse.

III

In this case we once again consider the admissibility of other acts evidence under MRE 404(b). The general rule is more easily stated than applied: evidence of other crimes, wrongs, or acts of an individual is inadmissible to prove a propensity to commit such acts. MRE 404(b). Such evidence may be admissible, however, for other purposes under MRE 404(b)(1), which provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

The decision whether such evidence is admissible is within the trial court's discretion and will only be reversed where there has been a clear abuse of discretion. *People v Bahoda*, 448 Mich 261; 531 NW2d 659 (1995).

The character evidence prohibition is deeply rooted in our jurisprudence. Far from being a mere technicality, the rule "reflects and gives meaning to the central precept of our system of criminal justice, the pre-

---

[4] Issued October 10, 1995 (Docket No. 165956).

sumption of innocence." *United States v Daniels*, 248
US App DC 198, 205; 770 F2d 1111 (1985). Underlying
the rule is the fear that a jury will convict the defend-
ant inferentially on the basis of his bad character
rather than because he is guilty beyond a reasonable
doubt of the crime charged. Evidence of extrinsic bad
acts thus carries the risk of prejudice, for it is anti-
thetical to the precept that "a defendant starts his life
afresh when he stands before a jury . . . ." *People v
Zackowitz*, 254 NY 192, 197; 172 NE 466 (1930). As
the United States Supreme Court recently noted in
*Old Chief v United States*, 519 US 172, 181; 117 S Ct
644; 136 L Ed 2d 574 (1997), the problem with charac-
ter evidence generally and prior bad acts evidence in
particular is not that it is irrelevant, but, to the con-
trary, that using bad acts evidence can " 'weigh too
much with the jury and . . . so overpersuade them
as to prejudge one with a bad general record and
deny him a fair opportunity to defend against a partic-
ular charge.' " Quoting *Michelson v United States*, 335
US 469, 476; 69 S Ct 213; 93 L Ed 168 (1948). The fun-
damental principle of exclusion, codified by MRE
404(b), is woven into the fabric of Michigan
jurisprudence:

> There can be little doubt that an individual with a sub-
> stantial criminal history is more likely to have committed a
> crime than is an individual free of past criminal activity.
> Nevertheless, in our system of jurisprudence, we try cases,
> rather than persons, and thus a jury may look only to the
> evidence of the events in question, not defendant's prior
> acts in reaching its verdict. See *United States v Mitchell*, 2
> US (2 Dall) 348, 357; 1 L Ed 410 (1795). [*People v Allen*, 429
> Mich 558, 566-567; 420 NW2d 499 (1988).]

This Court's most recent formulation of the MRE 404(b) test appears in *People v VanderVliet*, 444 Mich 52; 508 NW2d 114 (1993). In that case, we rejected a rigid, bright-line approach to other acts evidence and directed the bench and bar to employ the evidentiary safeguards already present in the Rules of Evidence, as identified by the United States Supreme Court in *Huddleston*:[5]

> First, that the evidence be offered for a proper purpose under Rule 404(b); second, that it be relevant under Rule 402 as enforced through Rule 104(b); third, that the probative value of the evidence is not substantially outweighed by unfair prejudice; fourth, that the trial court may, upon request, provide a limiting instruction to the jury. [*Vander-Vliet, supra* at 55.]

Under this formulation, the prosecution bears the initial burden of establishing relevance of the evidence to prove a fact within one of the exceptions to the general exclusionary rule of MRE 404(b). Where the only relevance is to character or the defendant's propensity to commit the crime, the evidence must be excluded. Where, however, the evidence also tends to prove some fact other than character, admissibility depends upon whether its probative value outweighs its prejudicial effect, taking into account the efficacy of a limiting instruction in cushioning the prejudicial effect of the evidence.

Thus, the first question that must be addressed is whether the prosecutor has articulated a proper noncharacter purpose for admission of the defend-

---

[5] *Huddleston v United States*, 485 US 681; 108 S Ct 1496; 99 L Ed 2d 771 (1988).

ant's prior drug conviction.[6] The prosecutor offers

---

[6] The dissent vociferously objects to the proposition that the prosecutor must bear the burden of articulating a proper noncharacter purpose for the admission of prior acts evidence under MRE 404(b). However, the principle that the proponent of evidence bears the burden of establishing relevance and admissibility is a matter of basic hornbook law. See 22 Wright & Graham, Federal Practice & Procedure, § 5166, pp 65-76. Instead of fashioning an argument why the prosecutor should be relieved of this burden in MRE 404(b) cases, the dissent accuses the majority of somehow shifting or heightening the prosecutor's burden under MRE 404(b). Our requirement that the prosecutor articulate a proper noncharacter purpose comports not only with the plain language of MRE 404(b), but also with the approach utilized by the majority of federal circuits. In *United States v Sampson*, 980 F2d 883 (CA 3, 1992), for example, the Third Circuit reversed the defendant's conviction and remanded the case for a new trial because the government had failed to meet its burden of establishing a sufficient noncharacter purpose for admission of the defendant's prior drug convictions. After expressing its concern that, although the proponents of Rule 404(b) evidence "will hardly admit it, the reasons proffered to admit prior act evidence may often be [P]otemkin village, because the motive, we suspect, is often mixed between an urge to show some other consequential fact as well as to impugn the defendant's character," *Sampson* at 886, the court described the contours of the government's burden when seeking the admission of prior crimes:

> If the government offers prior offense evidence, it must clearly articulate how that evidence fits into a chain of logical inferences, no link of which can be the inference that because the defendant committed drug offenses before, he therefore is more likely to have committed this one. . . . Thus, the burden on the government is not onerous. All that is needed is some showing of a proper relevance. Whereupon the trial court must judge the government's proffered reason, the potential for confusion and abuse, and the significance of the evidence, and decide whether its probative value outweighs its prejudicial effect. [*Id.* at 887-888.]

Federal circuits similarly requiring the government to articulate, in a clear and logical manner, at least one proper noncharacter purpose for admission of prior acts evidence include: *United States v Rackstraw*, 7 F3d 1476, 1478-1479 (CA 10, 1993) ("When offering 404(b) evidence, the government 'must articulate precisely the evidential hypothesis by which a fact of consequence may be inferred from the evidence of other acts.' . . . Concomitantly, the trial court must identify specifically the purpose for which the evidence is admitted. . . . There must be a clear and logical connection between the 'other acts' evidence and the case being tried"); *United States v Mayans*, 17 F3d 1174, 1181 (CA 9, 1994) ("the government 'must articulate precisely the evidential hypothesis by

two theories of admissibility to support the admission of the defendant's 1988 drug conviction. The first is to show that the defendant knew the cocaine was hidden in the dashboard of his car. The second is to show that he intended to deliver drugs in 1992. "Knowledge" and "intent" are indeed included among MRE 404(b)'s laundry list of proper purposes. However, a common pitfall in MRE 404(b) cases is the trial courts' tendency to admit the prior misconduct evidence merely because it has been "offered" for one of the rule's enumerated proper purposes. Mechanical recitation of "knowledge, intent, absence of mistake, etc.," without explaining how the evidence relates to the recited purposes, is insufficient to justify admission under MRE 404(b). If it were, the prosecutor could routinely admit character evidence by simply calling it something else. Relevance is not an inherent characteristic, *Huddleston, supra* at 689, nor are prior bad acts intrinsically relevant to "motive, opportunity, intent, preparation, plan," etc. Relevance is a relationship between the evidence and a material fact at issue that must be demonstrated by reasonable inferences that make a material fact at issue more probable or less probable than it would be without the evidence. *United States v Sampson,* 980 F2d 883, 888 (CA 3,

---

which a fact of consequence may be inferred from the other acts evidence' "); *United States v Yeagin,* 927 F2d 798, 803 (CA 5, 1991) ("A trial judge faced with the problem of admissibility of other crimes evidence should exercise caution and should require the government to explain why the evidence is relevant and necessary on a specific element that the government must prove"); *United States v Arias-Montoya,* 967 F2d 708, 713 (CA 1, 1992) (admission of prior acts evidence " 'is by no means a routine exercise and should not be accepted unless the government articulates with suitable precision the "special" ground for doing so' "); *United States v Mothershed,* 859 F2d 585, 589 (CA 8, 1988); *United States v Zelinka,* 862 F2d 92, 99 (CA 6, 1988).

1992). In order to ensure the defendant's right to a fair trial, courts must vigilantly weed out character evidence that is disguised as something else. The logical relationship between the proffered evidence and the ultimate fact sought to be proven must be closely scrutinized.[7]

Logical relevance, the "touchstone" of the admissibility of prior acts evidence, is determined by the application of Rules 401 and 402.

MRE 401 provides:

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

MRE 402 provides:

All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Michigan, these rules, or other rules adopted by the Supreme Court. Evidence which is not relevant is not admissible.

Pursuant to MRE 401, evidence is relevant if two components are present, materiality and probative value. Materiality is the requirement that the proffered evidence be related to "any fact that is of consequence" to the action. "In other words, is the fact to be proven truly in issue?" Wade & Strom, Michigan Courtroom Evidence (rev ed), Rule 401, p 71. A fact

---

[7] Weinstein notes that although "courts on occasion have admitted other-acts evidence almost automatically, without any real analysis, if they find it fits within one of the categories specified in Rule 404(b). . . . Rule 404(b) does not authorize automatic admission, and the proponent of the evidence must demonstrate its relevance." 2 Weinstein, Federal Evidence, § 404.20[3], pp 404-41 to 404-42.

that is "of consequence" to the action is a material
fact. *People v McKinney*, 410 Mich 413; 301 NW2d 824
(1981). "Materiality looks to the relation between the
propositions for which the evidence is offered and
the issues in the case. If the evidence is offered to
help prove a proposition which is not a matter in
issue, the evidence is immaterial." 1 McCormick, Evidence (4th ed), § 185, p 773.

It is well established in Michigan that all elements
of a criminal offense are "in issue" when a defendant
enters a plea of not guilty. *People v Mills*, 450 Mich
61, 69; 537 NW2d 909 (1995). Because the prosecution
must carry the burden of proving every element
beyond a reasonable doubt, regardless of whether the
defendant specifically disputes or offers to stipulate
any of the elements, the elements of the offense are
always "in issue" and, thus, material. See *Old Chief,
supra*. The elements of the charge of possession with
intent to deliver cocaine, as applied to this case, are
as follows: (1) the defendant knowingly possessed a
controlled substance; (2) the defendant intended to
deliver this substance to someone else; (3) the substance possessed was cocaine and the defendant
knew it was cocaine; and (4) the substance was in a
mixture that weighed between 50 and 225 grams. See
also CJI2d 12.3.

Because the prosecution was obligated under the
statute to prove that the defendant knowingly possessed cocaine and that he did so with the specific
intent of distributing it, knowledge and intent were
"in issue." The first step on the ladder of relevance,
materiality, is thus reached.

The probative force inquiry asks whether the proffered evidence tends "to make the existence of any

fact that is of consequence to the determination of
the action more probable or less probable than it
would be without the evidence." The threshold is min-
imal: "any" tendency is sufficient probative force.
MRE 401. See *Beaubien v Cicotte*, 12 Mich 459, 484
(1864), and *Collins v Beecher & Marquette & Pacific
Rolling Mill Co*, 45 Mich 436, 438; 8 NW 97 (1881). In
the context of prior acts evidence, however, MRE
404(b) stands as a sentinel at the gate: the proffered
evidence truly must be probative of something *other*
than the defendant's propensity to commit the crime.
If the prosecutor fails to weave a logical thread link-
ing the prior act to the ultimate inference, the evi-
dence must be excluded, notwithstanding its logical
relevance to character.[8]

---

[8] We do not quarrel with the dissent's assertion that *VanderVliet*
embraced the "inclusionary" approach to prior misconduct evidence.
However, the term "inclusionary" can be deceptive. The distinction
between MRE 404(b) as a rule of "inclusion" as opposed to a rule of
"exclusion" does not signify a shift to a more liberal policy toward the
admission of prior act evidence. The "inclusionary" theory merely recog-
nizes that similar acts can be admissible despite the inference to charac-
ter so long as there is at least one proper noncharacter-based inference
linking the prior act to the ultimate inference, and that, contrary to the
position taken at common law, Rule 404(b)'s list of proper purposes is
nonexclusive. As Wright and Graham explain in their influential treatise
on the Federal Rules of Evidence:

The common law rule has been described as "an unctuous, but
easily circumvented rule of exclusion." Wigmore stated it this way:
"The doing of another criminal act, not a part of the issue,
is . . . not admissible as evidence of the doing of the criminal act
charged, except when offered for the specific purpose of evidenc-
ing Design, Plan, Motive, Identity, Intent, or other relevant
fact . . . distinct from Moral Character." While the general rule of
exclusion is often applauded—and occasionally enforced—it is the
exceptions that are of most practical significance. Courts have
found it difficult to distinguish the rule from the exceptions and
Professor Stone, in two influential articles, argued that the true
rule was the reverse of the one stated by Wigmore; i.e., evidence of
other crimes is admissible except when it proves nothing but the

Turning to the present case, the question becomes whether the prosecutor carried its burden of demonstrating that the defendant's prior conviction establishes some intermediate inference, other than the improper inference of character, which in turn is probative of the ultimate issues in this case, the defendant's knowledge of the presence of cocaine and his intent to deliver it.[9] We agree with the defendant that

propensity of the defendant to engage in criminal conduct. Professor Stone's version of the rule—usually referred to as the "inclusionary" or "positive" rule as against Wigmore's "exclusionary" or "negative" formulation—has been favored by many commentators and adopted by some courts, but the majority rule at common law took the form stated by Wigmore. [22 Wright & Graham, Federal Practice & Procedure, § 5239, pp 428-432.]

The "inclusionary" theory thus recognizes the rule's restrictive application to evidence offered solely to prove criminal propensity, a point that was settled before *VanderVliet*, but does not require courts to err on the side of admission, or to admit evidence that would not have been admissible before *VanderVliet*. See *United States v Figueroa*, 618 F2d 934, 939, n 2 (CA 2, 1980) ("The exclusionary approach to similar act evidence obliges the trial court to determine whether the issue sought to be proved is among the traditional exceptions to the rule barring prior act evidence; the inclusionary approach permits the evidence to be used to prove any issue other than propensity, but the trial court is still obliged to ask, 'Is the evidence in any way relevant to a fact in issue otherwise than by merely showing propensity?' " Stone, *The rule of exclusion of similar fact evidence: America*, 51 Harv L R 988, 1004 [1938]).

[9] Imwinkelried, whom the dissent, *post* at 417, ironically accuses the majority of citing selectively, expressly rejects, as contrary to the plain language of the rule, the dissent's contention that "an intermediate noncharacter inference is required only where the prior act is offered to prove conduct":

The second sentence of Rule 404(b) refers to "identity" as a permissible use of uncharged misconduct evidence. However, no one would suggest that Rule 404(b) permits the prosecutor to invite the jury to reach the conclusion of identity through an intermediate inference of character. The second sentence also alludes to "intent." By parity urging of reasoning, the rule should be construed as prohibiting the prosecutor from urging the jury to reach that conclusion through an intermediate inference of the defendant's disposition of a certain mens rea. The better-reasoned cases

no such intermediate inference has been established.[10]

To establish the probativeness of the evidence, the prosecutor invokes the "doctrine of chances," also known as the "doctrine of objective improbability."[11]

---

require the prosecutor to reach the ultimate inference of mens rea without relying on an intermediate inference of character. [Imwinkelried, Uncharged Misconduct Evidence, § 5:01.50, p 4.]

Under the dissent's view, prior convictions offered to prove a defendant's state of mind are admissible as a matter of course, subject only to MRE 403 balancing. Given that MRE 403 already applies to all offers of evidence, however, it strains logic to suggest that MRE 404(b) erects no barrier to the admission of such evidence.

[10] The rationale for the exclusion of character evidence to establish mens rea, as described by Imwinkelried, is twofold:

One is that if the jury must consciously focus on the issue of the defendant's character, there is a grave risk that at a subconscious level, they will be tempted to punish the defendant for his or her uncharged misconduct. That risk is certainly present when the jury addresses the question of whether the defendant has a propensity for forming a mens rea. The jury might be repulsed by the defendant's "criminal mind." The other probative danger underpinning the character evidence prohibition is the risk that the jurors will overestimate the probative value of character as a predictor of conduct. That risk is also applicable when the jury reasons from the defendant's propensity for a mens rea to the conclusion that the defendant had a guilty state of mind on the charged occasion. The cognitive and volitional aspects of conduct account in large part for the unpredictability of human behavior. [Imwinkelried, n 9 supra, § 5:01.50, pp 3-4. See People v Schweitzer, 23 Mich 301, 304 (1871).]

[11] We infer the prosecution's reliance on the doctrine of chances from his opening and closing statements. In his opening statement, the prosecutor explained the relevance of the defendant's prior conviction as follows:

An additional piece of evidence that you're going to hear, ladies and gentlemen, will be testimony from other officers, other officers who came into contact with the Defendant in 1988. And at that time, you will hear testimony from Oakland County Narcotics Enforcement Team officers who purchased one-half kilogram or 500 grams of cocaine from the Defendant in June of 1988. . . . [T]hat evidence is going to show that the Defendant obviously knew that the cocaine was in his car, that somebody didn't leave this valuable amount, this much cocaine in his car without his

This theory, which is attributed to Professor Wigmore, is widely accepted, although its application varies with the issue for which it is offered. Where material to the issue of mens rea, as here, it rests on the premise that "the more often the defendant commits an actus reus, the less is the likelihood that the defendant acted accidentally or innocently." Imwinkelried, Uncharged Misconduct Evidence, § 3:11, p 45. Consequently, the forbidden intermediate inference to defendant's subjective character is not implicated:

> [T]his theory of logical relevance does not depend on a character inference. The proponent is not asking the trier of fact to infer the defendant's conduct (entertaining a particular mens rea) from the defendant's personal, subjective character. The intermediate inference is an objective likelihood under the doctrine of chances rather than a subjective probability based on the defendant's character. [*Id.*, § 5:05, p 12.]

---

knowing it. And it will show that the defendant, at the time he possessed this cocaine, intended to deliver it, that he intended to deliver the cocaine in 1988.

And in closing argument:

[D]id [Defendant] know the cocaine was there? In 1988, he delivered a half kilogram of cocaine to Deputy Moore at the Diplomat Towers Apartments in Southfield, Michigan. It's common sense, ladies and gentlemen. Based upon these facts that are admitted into evidence, they clearly show that the Defendant knew the cocaine was there.

And later:

[T]he fact that he was convicted in 1988 for delivery of a half kilogram of cocaine, 500 grams of cocaine, inescapably leads to the conclusion that he knew the cocaine was there.

However, Imwinkelried cautions against the routine admission of prior misconduct evidence under the doctrine of chances because the theory is prone to abuse and may result in the admission of character evidence in disguise:

> [The doctrine of chances theory] can easily be abused. . . . [I]ntent is an essential element of every true crime. Whenever the prosecutor has evidence of an uncharged crime similar to the charged offense, the prosecutor can attempt to invoke Wigmore's doctrine of chances; the prosecutor can always argue that a similar uncharged crime triggers the doctrine of chances and is, therefore, logically relevant on a noncharacter theory both to disprove accident and thereby to prove mens rea. If the courts accept these arguments uncritically, the prosecutor may be able to introduce bad character evidence in disguise. . . . To counter this tendency, the courts should clearly enunciate and rigorously enforce the foundational requirements applicable when the prosecutor relies on the doctrine of chances to establish mens rea. [Imwinkelried, *The use of evidence of an accused's uncharged misconduct to prove mens rea: The doctrines which threaten to engulf the character evidence prohibition*, 51 Ohio St L J 575, 595 (1990).]

Elaborating on the foundational requirements for triggering the doctrine of chances to prove mens rea, Imwinkelried explains that the prosecutor must "make persuasive showings that each uncharged incident is similar to the charged offense and that the accused has been involved in such incidents more frequently than the typical person."[12] *Id.* at 602. We find

---

[12] Weinstein states:

> In each individual case, the trial judge must decide whether the proffered evidence tends to make the consequential fact more or less probable. If the connection between the other crime and the

this reasoning to be sound. The applicability of the doctrine of chances depends on the similarity between the defendant's prior conviction and the crime for which he stands charged.[13]

We conclude that there is an insufficient factual nexus between the prior conviction and the present charged offense to warrant admission of the evidence

---

charged crime is strong, admission may be appropriate. If the connection is weak, exclusion is generally sound. If enough time has passed, the other crime may be of such attenuated probative value as to warrant exclusion. [2 Weinstein, n 7 *supra* at § 404.21(2)(c), pp 404-54 to 404-55.]

[13] A simple analogy will prove the point. If the prosecutor were "offering" evidence of a prior arson conviction to prove that the defendant knowingly possessed cocaine with the intent to deliver, even the dissent would likely concede that the offer would fail the initial test of relevancy on the ground that the two acts were too dissimilar. Under this scenario, the evidence is inadmissible even though it is "offered" for a "proper purpose" under Rule 404(b), that is, to prove knowledge and intent. If, however, defendant's prior crime involved the concealment of drugs in the dashboard of his car, that evidence would likely be admissible under the doctrine of chances because of the stark similarity of the two crimes. There is, then, a continuum upon which each proffered prior act must be placed; the more similar the prior act to the charged crime, the closer the evidence to the admissibility threshold. Cases cited by the prosecution and the dissent that have admitted prior crimes to prove knowledge and intent have similarly required a close factual nexus between the prior and charged crimes. See, e.g., *United States v Rackstraw*, n 6 *supra* at 1479 ("We have long recognized the relevance of prior crimes in the context of narcotics violations where the uncharged misconduct is close in time and similar in method to the charged scheme and where knowledge . . . was at issue"); *United States v Garcia*, 983 F2d 1160, 1173 (CA 1, 1993) ("In this case, there is a close nexus between the past act and the current charges"); *United States v Hernandez*, 84 F3d 931, 935 (CA 7, 1996) ("we agree that Hernandez' prior conviction satisfied the similarity/proximity requirements"); *United States v Adrian*, 978 F2d 486, 493 (CA 9, 1992) ("It does not appear from the record whether the prior convictions were similar enough and proximate enough in time to the present offenses to make them highly relevant to appellee's intent"); see also *United States v Hernandez-Miranda*, 601 F2d 1104, 1108 (CA 9, 1979) ("When a prior criminal act is relied upon to prove intent or knowledge, similarity between the two events must be shown to establish the threshold requirement of relevance").

under the doctrine of chances. The arresting officer from the 1988 offense testified at length about how he had waited with a codefendant in that earlier case until the defendant and a codefendant appeared on the scene. He said that the defendant and the third man got out of their car and entered an apartment building. The defendant was carrying a distinctive plastic bag. After a few moments, the officer was invited into the apartment. Cocaine was taken from the bag and handed to the officer. After field testing it, the officer handed $5,000 to the defendant. He then gave a prearranged signal that brought in other officers to arrest all the participants.

In this case, however, the defendant was not caught in the act of selling drugs. Rather, he was stopped for a routine traffic violation, which ultimately led to the discovery of cocaine hidden in the dashboard of his car. There was evidence at trial that the defendant had purchased the car just five to ten days before his arrest, and that the car had been in the possession of others during that time, lending support to the defense theory that the prior owner or someone else left the drugs in the car, unwittingly or in an attempt to frame the defendant. The plausibility of this defense was to be determined by the jury on the basis of its assessment of the credibility of the witnesses. However, the factual relationship between the 1988 crime and the charged offense was simply too remote for the jury to draw a permissible intermediate inference of the defendant's mens rea in the present case. The facts of the 1988 drug offense simply do not bear out the prosecutor's contention that the defendant "obviously knew" the drugs were in his dashboard and that he intended to deliver them. The

prior conviction only demonstrates that the defendant has been around drugs in the past and, thus, is the kind of person who would knowingly possess and intend to deliver large amounts of cocaine. To the extent that the 1988 conviction is logically relevant to show that the defendant was also a drug dealer in 1992, we believe it does so solely by way of the forbidden intermediate inference of bad character that is specifically prohibited by MRE 404(b). Thus, the defendant's prior conviction was mere character evidence masquerading as evidence of "knowledge" and "intent." Because MRE 404(b) expressly prohibits the use of prior bad acts to demonstrate a defendant's propensity to form a certain mens rea, we hold that the trial court abused its discretion in admitting evidence of the defendant's prior conviction and reverse and remand the case for a new trial.[14]

IV

Even if we were to find that the evidence of the defendant's prior conviction had some logical relevance distinct from the impermissible character inference, we would nevertheless conclude that it should have been excluded by MRE 403 because the danger of unfair prejudice substantially outweighed whatever

---

[14] Rather than attempting to explain the specific logical progression that makes either knowledge or intent more likely in light of the defendant's prior crime, the dissent simply argues that the involvement of cocaine in defendant's 1988 conviction alone "makes [it] more probable than not that defendant knowingly possessed drugs with the intent to distribute them" in the present case. *Post* at 414. This is a poorly disguised propensity argument, which is precisely what Rule 404(b) expressly forbids. *United States v Betts*, 16 F3d 748, 759 (CA 7, 1994); *People v Beasley*, 809 F2d 1273 (CA 7, 1987); *Arias-Montoya*, n 6 *supra*; *United States v Lynn*, 856 F2d 430 (CA 1, 1988); *United States v Mehrmanesh*, 689 F2d 822 (CA 9, 1982).

marginal probative value it might have had. Rule 403 does not prohibit prejudicial evidence; only evidence that is unfairly so. Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury. In the context of prior bad acts, that danger is prevalent. When a juror learns that a defendant has previously committed the same crime as that for which he is on trial, the risk is severe that the juror will use the evidence precisely for the purpose that it may not be considered, that is, as suggesting that the defendant is a bad person, a convicted criminal, and that if he "did it before he probably did it again." *People v Johnson*, 27 F3d 1186, 1193 (CA 6, 1994). Because prior acts evidence carries with it a high risk of confusion and misuse, there is a heightened need for the careful application of the principles set forth in MRE 403.[15] *Id.*

Applying the important principles of MRE 403 to the present case, we cannot escape the conclusion that the most powerful, if not the only, inference that the jury was likely to make from the prior conviction is the forbidden one: that because the defendant was convicted of selling cocaine in 1988, he must be guilty here. Thus, the specter of impermissible character evidence is likely to have significantly overshadowed any legitimate probative value. To use Justice Car-

---

[15] The dissent urges us to defer to the trial court's balancing of prejudicial effect versus probative force because our "rejection of the trial court's balancing under Rule 403" is simply a substitution of our "judgment for that of the trial court." *Post* at 439. However, the trial court's misapplication of MRE 404(b) caused it to overvalue the probativeness of the evidence. Having held that the evidence had no relevance apart from the impermissible character inference, we refuse to abdicate our responsibility to review the circuit court's balancing under MRE 403 and to reverse that ruling where necessary to prevent injustice.

dozo's expression, we believe the "reverberating clang" of the evidence that the defendant sold drugs in 1988 drowned the "weaker sound" of the other evidence properly before the jury, leaving the jury to hear only the inference that if the defendant did it before, he probably did it again. *Shepard v United States*, 290 US 96, 104; 54 S Ct 22; 78 L Ed 196 (1933); *United States v Merriweather*, 78 F3d 1070, 1077 (CA 6, 1996). We hold that the evidence was substantially more prejudicial than probative and should not have been admitted.[16]

V

Finally, we consider whether the introduction of the defendant's prior conviction constituted harmless error. Error requires reversal only if it is prejudicial. *People v Mateo*, 453 Mich 203, 215; 551 NW2d 891 (1996). The prejudice inquiry "focuses on the nature of the error and assesses its effect in light of the

---

[16] The prosecutor and dissent argue that any undue prejudice was offset by the following cautionary instruction given by the judge at the conclusion of the trial:

> You have heard evidence that was introduced to show that the Defendant committed a crime for which he is not on trial. If you believe this evidence, you must be very careful only to consider it for certain purposes. In this case, you may only think about whether this evidence tends to show that the Defendant specifically meant to or intended to commit the crime as charged, which I will give you the elements of in a moment. You must not consider this evidence for any other purpose.

While a limiting instruction will often suffice to enable the jury to compartmentalize evidence and consider it only for its proper purpose, we note the absence of a proper purpose in this case to which the jury could limit its use of the evidence. Although the prior conviction was purportedly "offered" to prove knowledge and intent, the *only* real relevance of the prior conviction was to depict the defendant as a drug dealer. Against this, the limiting instruction was not limiting at all. See *United States v Wright*, 901 F2d 68, 70 (CA 7, 1990).

weight and strength of the untainted evidence." *Id.*
Our analysis in the foregoing section leads us to the
inescapable conclusion that admission of the defend-
ant's prior conviction was not harmless.[17] *People v
Gearns*, 457 Mich 170; 577 NW2d 422 (1998).

CONCLUSION

We hold that on the facts of this case the trial court
abused its discretion by admitting evidence of the
defendant's prior conviction because the prosecution
failed to establish a proper purpose under MRE
404(b). We further hold that the error was not harm-
less. We therefore reverse the defendant's conviction
and remand the case to the trial court for further pro-
ceedings consistent with this opinion.

MALLETT, C.J., and CAVANAGH and KELLY, JJ., con-
curred with BRICKLEY, J.

BOYLE, J. (*dissenting*). Protestations to the contrary,
the majority rejects the inclusionary view of MRE
404(b),[1] universally recognized to preclude bad acts

---

[17] The dissent's statement that "[a]ny error in admitting the prior acts
evidence was slight or negligible" ignores the fact that the prosecution
was allowed to parade the defendant's prior conviction before the jury
constantly throughout this brief trial. *Post* at 443. The jury heard detailed
information about the prior arrest in the prosecution's opening and clos-
ing statements, the direct examination of the arresting officer from 1988,
and in the cross-examination of the defendant's wife. This repetition
greatly enhanced the danger of unfair prejudice arising from the admis-
sion of defendant's prior conviction. The decision of the First Circuit in
*Arias-Montoya*, n 6 *supra*, is instructive on this point. In a case that is
remarkably similar to the case at bar, the court ruled that evidence of the
defendant's prior drug conviction was improperly admitted, but that the
admission of the evidence constituted harmless error. The court found
"particularly significant" the fact that, "aside from eliciting two lines of
testimony about the 1983 conviction, the prosecutor made no further ref-
erence to it, either at trial or . . . in his closing." *Id.* at 714.

[1] *People v VanderVliet*, 444 Mich 52; 508 NW2d 114 (1993).

evidence only when it is used to prove the character of a person and that he acted in conformity therewith. The heightened burden/exclusionary approach advocated by the majority is inconsistent with the language of the Rules of Evidence and with our decision in *People v VanderVliet*, 444 Mich 52; 508 NW2d 114 (1993). A frank recognition that this is the position the Court now advocates is less destructive of the Court's integrity than the majority's attempt to posture its position as consistent with the rules and prior precedent.

More ominously for what the majority's decision bodes for the future, is that its analysis signals a lack of fidelity to the philosophy of liberal admissibility and the primacy of trial court rulings embodied in the Michigan Rules of Evidence. Bad acts evidence is precluded *only* when the plaintiff or prosecutor uses character as a way station on the road to an ultimate inference of conduct in conformity, and expressly prohibits only one theory of logical relevancy. Stated otherwise, if there is any other theory of logical relevance of prior misconduct, the evidence falls outside Rule 404(a).[2] It is admissible unless the opponent

---

[2] Rule 404 states:

(a) *Character evidence generally.* Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:

(1) *Character of accused.* Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same;

(2) *Character of victim of a crime other than a sexual conduct crime.* Evidence of a pertinent trait of character of the victim of the crime, other than in a prosecution for criminal sexual conduct, offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor;

shows that the probative value is "substantially out-weighed" by the potential for prejudice.[3]

Specifically, the majority ignores the fact that the defendant actively disputed intent to distribute by requesting a lesser charge of possession without intent to distribute. The majority concludes that the similarity between the prior act, distribution of a commercial amount of cocaine, and the charged crime, possession with intent to deliver a like quantity, is insufficient because the former act did not involve concealing drugs "behind the dashboard."[4]

---

(3) *Character of victim of sexual conduct crime.* In a prosecution for criminal sexual conduct, evidence of the victim's past sexual conduct with the defendant and evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease;

(4) *Character of witness.* Evidence of the character of a witness, as provided in Rules 607, 608, and 609.

[3] Rule 403 states:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

[4] The majority relies heavily on the decision of the United States Court of Appeals for the First Circuit in *United States v Arias-Montoya,* 967 F2d 708 (CA 1, 1992). The decision is instructive, *ante* at 400, n 17, but for different reasons. The facts of the case are not "remarkably similar" to the present case. In *Arias,* the charge involved a traffic violation in Rhode Island for speeding. The defendant claimed that he had left his driver's license at home and gave the officers a false name and address. He informed the officers that the car belonged to a friend in New York and provided registration indicating the same. A search of the vehicle revealed a kilogram of cocaine taped and wrapped in plastic bags in the trunk of the car. The prior act that was admitted was a ten-year-old conviction for possession of cocaine in Texas.

The majority fails to state that the court reviewed and applied the precedent developed in *United States v Moccia,* 681 F2d 61 (CA 1, 1982) (drugs were discovered in the defendant's own home), *United States v Rubio-Estrada,* 857 F2d 845 (CA 1, 1988) (scales, white powder and cash

The majority's analysis appears to resurrect the rejected proposition that, unless the prosecutor argues the correct theory, the evidence is inadmissible.[5] It also shifts and heightens the burden of showing the probative force of Rule 404(b) evidence, despite the explicit language of Rules 402 and 403. Both approaches undermine the Rules of Evidence by endorsing the policy of exclusion. In short, while the majority professes adherence to the inclusionary approach, its analysis reasserts the exclusionary approach of the common law enforced by appellate control and subverts the foundational principles of Rules 402, 403, and 404.

---

found in the defendant's home support the inference that the defendant knew drugs were for distribution), and *United States v Ferrer-Cruz*, 899 F2d 135 (CA 1, 1990) (cocaine was found on the front floor of the defendant's car). The court reviewed the facts in *Arias* noting that,

> [h]ad the car belonged to defendant, *or* were there evidence that he had used it for an extended period of time *or* on more than one occasion, we might be willing to presume he would have had reason to open its trunk and, so, to know that a kilogram of cocaine was hidden there. Arguably, the fact of defendant's prior possession coupled with his access to and use of the trunk would make it more likely for him to have come across the cocaine *or* recognized the cavity in the trunk as a good place to hide it. [*Arias, supra* at 712.]

Defendant Crawford was driving his own car and testimony indicated that he used it more than once over a two-week time frame. His access to and use of the car plus his prior possession and distribution conviction makes it more likely for him to have recognized the area behind the dashboard as a good place to hide a distribution amount of cocaine. The decision in *Arias* is factually inconsistent with the majority's assertions and does not support its position.

[5] The majority's citation of the holding in *United States v Sampson*, 980 F2d 883 (CA 3, 1992), *ante* at 386, n 6, supports this assumption, while failing to acknowledge that the method of analysis employed in *Sampson* was rejected in *VanderVliet*.

The majority's conclusion that the evidence of an identical state of mind had "no relevance apart from the impermissible character inference," *ante* at 398, n 15, amounts to a contention that the prior act of distribution did not make the defendant's intent to distribute more probable than it would have been without the evidence, a truly remarkable proposition.[6] The holding that the prior act was character evidence "masquerading" as evidence of knowledge and intent can be explained in only one of two ways: either 1) the majority does not understand the dual inference inquiry, i.e., the fact that the prior act permitted the inference that the defendant is the "kind of person" who would knowingly possess and intend to deliver large amounts of cocaine does not refute that the act also demonstrates the mental state in issue, or 2) the failure to understand is itself a masquerade, concealing an assertion of closer appellate control over evidentiary rulings by elevating the prosecutor's burden under Rule 404(b).

The majority's citation of *People v Allen*, 429 Mich 558; 420 NW2d 499 (1988), suggests that the latter explanation is the majority's actual motivation. As we observed in *VanderVliet, supra,* fear of the jury conflicts with the Rules of Evidence and "with the intuitive sense that some bad acts evidence is so powerfully probative that it would pervert the truth-seeking process to prevent a jury from using what looks like ordinary common sense." *Id.* at 73.

---

[6] The conclusion that the act had no probative value other than to show propensity, although intent to deliver was an element of the charged act and the included offense and the prior crime was delivery, is, of course, belied by the inconsistent observation that it demonstrated defendant's intent to deliver large amounts of cocaine. *Ante* at 396-397.

I

FACTS AND PROCEEDINGS

We restate the facts in the light most favorable to the prosecution. On September 22, 1992, ten months after his release from prison on parole from a three- to thirty-year term of imprisonment imposed in 1989 for conspiracy to deliver and delivery of cocaine, defendant was arrested and charged with possession with intent to deliver 50 to 225 grams of cocaine. A beeper was found during a "pat down" of defendant. Six ziplock baggies containing cocaine residue and doper fold papers were found in his jacket pocket, and there was a digital scale in a box under the car seat.

Further investigation revealed cocaine residue on the scale, a razor blade in the box with the scale, an additional ziplock baggie in defendant's wallet, a mobile phone, and $455 in cash (mostly in ten and twenty dollar bills) in his pants pocket. In an area behind the dashboard above the glove box, two sub- sequent searches of the impounded vehicle produced a large plastic bag containing cocaine weighing 173.1 grams, and a second bag containing several rocks of cocaine, one weighing 11.74 grams, and sixty-six indi- vidually packaged small rocks of crack cocaine in baggies (one rock tested weighed 0.16 grams), and additional empty baggies. Each baggie contained a twenty-dollar rock of crack, and the total street value of all the cocaine was estimated to be $36,000.

At the in limine motion hearing[7] of the prosecutor's notice of intent to prove prior misconduct, defense

---

[7] See appendix, *post* at 444, for hearing transcript.

counsel contended that defendant did not know that there was cocaine concealed behind the glove box and consequently that he was not knowingly in possession and could not have had an intent to deliver.

The judge summed up the defense position by stating: "[A]s I understand the controverted facts are that you say your client had no knowledge whatsoever of the—[cocaine] so he couldn't even be in possession much less have an intent to deliver. Am I correct on that?" Defense attorney responded, "Of the amount that was found behind the glove box. Correct."[8] The

---

[8] The defense attorney apparently conceded that the defendant was not contesting knowledge of the small amount of cocaine, less than a sixth of a gram, that the police found in the defendant's coat pocket. Even this amount was sufficient for a charge of possession and the defendant could have been found to be in possession solely on the basis of the cocaine residue found in his pocket and on the scale. Obviously, if the jury was persuaded that defendant only possessed the lesser amount, it might have concluded that there was no intent to deliver.

The reason for defendant's emphasis on the amount was that he was facing a mandatory life sentence for a second drug offense for possession in any amount over 50 grams. The penalty for a second offense if the amount was under 50 grams is significantly less. MCL 333.7413; MSA 14.15(7413) states:

(1) An individual who was convicted previously for a violation of any of the following offenses and is thereafter convicted of a second or subsequent violation of any of the following offenses shall be imprisoned for life and shall not be eligible for probation, suspension of sentence, or parole during that mandatory term:

(a) A violation of section 7401(2)(a)(ii) or (iii).

(b) A violation of section 7403(2)(a)(ii) or (iii).

(c) Conspiracy to commit an offense proscribed by section 7401(2)(a)(ii) or (iii) or section 7403(2)(a)(ii) or (iii).

(2) Except as otherwise provided in subsections (1) and (3), an individual convicted of a second or subsequent offense under this article may be imprisoned for a term not more than twice the term otherwise authorized or fined an amount not more than twice that otherwise authorized, or both.

(3) An individual convicted of a second or subsequent offense under section 7410(2) or (3) shall be punished, subject to subsection (4), by a term of imprisonment of not less than 5 years nor

trial court found the prior act relevant because, if defendant was unaware that he was in possession of the bags found above the glove box, he was innocent of possession of the larger amount of cocaine. Thus, both general mens rea and the intent to deliver were in issue.

The jurors were instructed during voir dire that the defendant had a previous conviction involving delivery of a controlled substance, and that it was "very important" that the crime was not admissible to prove character.[9]

In final instructions, the court again cautioned the jury that if it believed defendant committed another crime, it could only be considered on the question whether defendant specifically meant or intended to commit the crime charged.[10] The defendant requested a charge on possession without intent to deliver and argued that he should be convicted only of possession of a lesser amount or should be acquitted because of reasonable doubt. The jury was instructed on both possession with intent to deliver and "simple possession."[11] The jury found him guilty as charged,

---

more than twice that authorized under section 7410(2) or (3) and, in addition, may be punished by a fine of not more than 3 times that authorized by section 7410(2) or (3); and shall not be eligible for probation or suspension of sentence during the term of imprisonment.

[9] The court stated that the fact that the defendant may have done this before "has nothing to do with whether or not he did [it in] this particular case." After further explanation, the judge asserted that anyone in the courtroom who felt that if the defendant did it once he was bound to do it again, should not sit as a juror.

[10] The judge further stated that the jury could not convict defendant because he was a bad person or a person likely to commit crimes or because he was guilty of other bad conduct.

[11] The majority's suggestion that the limiting instruction was not directed to a proper purpose compounds its omission to acknowledge

and the Court of Appeals affirmed. Unpublished memorandum opinion, issued October 10, 1995 (Docket No. 165956).

II

### THE MAJORITY'S IMPOSITION OF A HEIGHTENED BURDEN UNDER RULE 404(b)

When the cobwebs are swept away, the majority ultimately rests on one simple but far-reaching proposition: Imwinkelried's thesis that the rules should be amended to require the proponent to show that the probative value of uncharged misconduct outweighs the prejudicial danger. Imwinkelried, *The need to amend federal Rule of Evidence 404(b): The threat to the future of the federal Rules of Evidence*, 30 Vill L R 1465, 1491 (1985).

Assuming arguendo that the Court has a retained common-law power to exclude the evidence[12] and that the common-law rule is preferable, the result is inconsistent with the language and philosophy of Rule 402.

If the rules are interpreted according to their plain meaning, they afford no basis to reintroduce the common-law approach to excluding relevant evidence by superimposing additional restrictions on the face of the language. Imwinkelried, *A brief defense of the Supreme Court's approach to the interpretation of the federal Rules of Evidence*, 27 Ind L R 267, 280

---

that defendant placed his specific intent in issue by requesting an included offense disputing the intent to distribute, the specific intent to which the charge was directed. *Ante* at 399, n 16.

[12] *People v Kreiner*, 415 Mich 372; 329 NW2d 716 (1982).

(1993). To repeat, logically relevant evidence is admissible, except "as otherwise provided."

It is precisely for this reason that the United States Supreme Court in *Huddleston v United States*, 485 US 681; 108 S Ct 1496; 99 L Ed 2d 771 (1988), long ago rejected the contention that the common-law foundation for admitting uncharged misconduct, i.e., clear and convincing evidence that the act occurred, applied under Rule 404(b). In unanimously rejecting the claim, the Court observed that Rule 104(b) sets out the procedure for determining preliminary facts, Rules 401 and 402 establish the broad principles of admissibility, and Rule 403 allows the trial court to exclude. The Court concluded that the text did not authorize the superimposition of the common-law rule as "a level of judicial oversight that is nowhere apparent from the language of that provision, but is simply inconsistent with the legislative history behind Rule 404(b)." *Id.* at 688.

Rule 404(b) "incorporates rule 403's balancing test, requiring the opponent to convince the judge that the prejudicial dangers substantially outweigh the probative value." Imwinkelried, *The need to amend, supra* at 1479-1480. The burden inquiry under Rule 403 is distinct from that of Rule 609. Imwinkelried and Margolin state:

> The wording of Rule 403 has remained unchanged since its adoption in 1975. However, prior to its 1990 amendment, Rule 609(a)(1), governing conviction impeachment, included the following language:
>
> "For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record during cross-examination but only if the

crime . . . was punishable by death or imprisonment in
excess of one year under the law under which the witness
was convicted, and the court determines that the probative
value of admitting this evidence outweighs the prejudicial
effect to the defendant."

Note the differences between the wording of the two bal-
ancing tests. Rule 403 is cast in the passive voice: "its pro-
bative value is . . . outweighed by the danger[s]." In con-
trast, the balancing test in the former version of Rule 609 is
in the active voice: "the probative value . . . outweighs the
prejudicial effect." In addition, Rule 403 includes the adverb
"substantially," which was absent from Rule 609.[13]

---

[13] Imwinkelried and Margolin additionally note:

The linguistic differences between the two statutes have seemed
significant to some commentators. The passive voice of Rule 403
suggests that the statute allocates the burden to the opponent of
the admission of logically relevant evidence to convince the judge
that the probative dangers outstrip the probative worth of the evi-
dence. In addition, the presence of the word "substantially" in Rule
403 indicates that the opponent must convince the judge that the
dangers outweigh the probative value of the evidence by a wide
margin. That interpretation of Rule 403 is sound. Allocating the
burden to the opponent reflects a Congressional decision to "place
priority on the principle of [logical] relevance . . . . Relevance in
terms of the search for truth is . . . the predominant interest."
When the proponent of evidence can demonstrate its relevance, the
probative value of the evidence is "unquestioned." However, the
dangers listed in Rule 403 are largely speculative risks—the risk,
for example, that a juror will overestimate the probative value of
an item of evidence. Since "probative value is a reality" but "preju-
dicial danger . . . only a risk," the scale should be biased in favor
of admitting relevant evidence.

In addition, this interpretation finds support in the legislative his-
tory of the Federal Rules. One of the themes running throughout
the legislative history is that the Rules favor the admission of logi-
cally relevant evidence. In the early hearings on the then proposed
Rules before the House of Representatives, the chair of the drafting
committee, Albert Jenner, Jr., asserted that "the overall philosophy
and thrust of the rules" is to "place the burden upon he who seeks
the exclusion of relevant evidence." Thus, there were strong policy
and statutory interpretation arguments for construing Rule 403 to
require the judge to admit relevant evidence unless the party
opposing the admission of the evidence sustained the burden of

\*       \*       \*

On its face, the amendment indicates that the Rule 403 balancing test differs from the test set out in the last clause of the amendment. A committee note accompanies the amendment. The Note explicitly differentiates between the two balancing tests. On the one hand, the Note states that when the prosecution's conviction evidence is subject to Rule 609(a)'s test, "the government [must] show that the probative value of [the] convictions as impeachment evidence outweighs their prejudicial effect." On the other hand, the Note declares that if conviction evidence is sub-

---

convincing the judge that the incidental probative dangers significantly outweighed the probative value of the evidence.

These arguments persuaded many courts to allocate the burden to the party resisting the introduction of relevant evidence. Yet other courts tended to apply Rule 403 as if it merely codified the general common-law view that the proponent of the admission of evidence has the burden of showing that the probative value of evidence exceeds the attendant probative dangers. However, that tendency should soon end.

In 1989, the Supreme Court rendered its decision in *Green v Bock Laundry Machine Co* [490 US 504; 109 S Ct 1981; 104 L Ed 2d 557 (1989)]. In that case, the Court dealt with the application of the balancing tests in Rules 403 and 609 to convictions offered to impeach civil witnesses. Although the Court did not elaborate on the balancing tests under the two statutes, the Court seemed to assume that the two tests differed.

In early 1990, the Judicial Conference's Committee on Rules of Practice and Procedure formally proposed an amendment to Rule 609 to revise the application of Rule 609's balancing test to convictions offered in civil cases. The amendment took effect December 1, 1990. The amended version of Rule 609(a)(1) now reads:

"For the purpose of attacking the credibility of a witness, . . . evidence that a witness other than the accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused." [Imwinkelried & Margolin, *The case for the admissibility of defense testimony about customary political practices in official corruption prosecutions*, 29 Am Crim L R 1, 29-31 (1991).]

ject to Rule 403's test, the opponent must "point to a real danger of prejudice that is sufficient to outweigh substantially the probative value of the conviction for impeachment purposes."

The amended language of Rule 609(a) and the supporting Note should end the split of authority among the lower federal courts over the proper construction of Rule 403. It is now well established that Rule 403 assigns the party opposing the admission . . . . [Imwinkelried & Margolin, *The case for the admissibility of defense testimony about customary political practices in official corruption prosecutions*, 29 Am Crim L R 1, 29, 31-32 (1991).]

The majority has thus simply amended Rule 404(b) by imposing its "judicial oversight" on the discretionary decisions of the trial bench.

III

The analysis and conclusion reveal the majority's angst regarding two of the fundamental principles underlying the Rules of Evidence—the basic premise of MRE 402[14] that all relevant evidence is admissible unless expressly precluded, and the corollary policy that the appellate court must defer to the primacy of the trial bench, constrained by the broad discretion invested in that bench under Rule 403.[15] These principles have been recently reiterated and reinforced in

---

[14] Rule 402 states:

All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Michigan, these rules, or other rules adopted by the Supreme Court. Evidence which is not relevant is not admissible.

[15] See Brocker, *Indelible ink in the milk: Adoption of the inclusionary approach to uncharged misconduct evidence in State v Coffey* [326 NC 268; 389 SE2d 48 (1990)], 69 NC L R 1604 (1991), and Imwinkelried, *The need to amend, supra* at 1465.

*Old Chief* v *United States*, 519 US 172; 117 S Ct 644; 136 L Ed 2d 574 (1997), in which the Supreme Court deemed erroneous a claim that the fact to which the bad acts evidence is directed must be in dispute or the evidence is irrelevant under Rule 401. Noting that the advisory committee notes to Rule 401 state that "[t]he fact . . . need not be in dispute," and that relevant evidence is evidence having any probative value, the Court concluded:

> If, then, relevant evidence is inadmissible in the presence of other evidence related to it, its exclusion must rest not on the ground that the other evidence has rendered it "irrelevant," but on its character as unfairly prejudicial, cumulative or the like, its relevance notwithstanding. [*Id.* at 179.]

The majority accomplishes its result by holding that evidence of defendant's prior misconduct, conviction of conspiracy to deliver, and delivery of 225 to 600 grams of cocaine was not "relevant" to an issue "other than the defendant's propensity to commit the crime" and by asserting that it is the prosecutor's burden "to weave a logical thread linking the prior act to the ultimate inference." *Ante* at 390. The majority purports to concede that defendant's knowledge of the presence of cocaine is logically relevant to the element of possession of cocaine and intent to deliver. *People v Wolfe*, 440 Mich 508, 519; 489 NW2d 748 (1992). *Ante* at 389. However, the majority concludes that because there was an insufficient factual nexus between the prior conviction and the present charged offense to warrant admission under the doctrine of chances, "[t]he prior conviction *only* demonstrates that the defendant has been around drugs in the past and [was] the kind of person who would knowingly

possess and intend to deliver large amounts of cocaine." *Id.* at 396-397 (emphasis added).

The evidence does not simply demonstrate that the defendant has been around drugs in the past; it makes more probable than not that defendant knowingly possessed drugs with the intent to distribute them. While the rationale for the majority's conclusion is not evident, it seems to rest on two propositions: the first, that it is the prosecutor's burden to "articulate[] a proper noncharacter purpose for admission of the defendant's prior drug conviction" and explain "how the evidence relates to the recited purposes,"[16] *ante* at 385-386, 387, and the second, that there is an insufficient factual nexus between the prior act and the charged offense. The rationale is, in either event, logically flawed.

### A. THE PROSECUTOR'S BURDEN

To the extent that the first rationale focuses on language in *People v Golochowicz*, 413 Mich 298; 319

---

[16] The majority cites two cases for support of its position: *People v Zackowitz*, 254 NY 192, 197; 172 NE 466 (1930), and *Michelson v United States*, 335 US 469, 476; 69 S Ct 213; 93 L Ed 168 (1948). *Ante* at 384. Both cases predate the adoption of both the FRE and the MRE and embrace the common-law approach excluding the evidence. Moreover, it is noteworthy that the United States Supreme Court in *Michelson* not only affirmed the trial court's ruling regarding the admission of character evidence in that case, but reaffirmed the wide discretion accorded trial courts and reiterated that "therefore rarely and only on clear showing of prejudicial abuse of discretion will Courts of Appeals disturb rulings of trial courts on this subject." *Michelson, supra* at 480. See also *United States v Daniels*, 248 US App DC 198, 205; 770 F2d 1111 (1985), cited by the majority. Contrary to the majority's assertion, as the quotation from Wright and Graham in their own footnote explains, Rule 404 does signal a shift to a liberal policy of admissibility. *Ante* at 390, n 8. The common law automatically excluded the evidence unless it came within an exception. The present rule admits the evidence unless its only relevance is to propensity. Imwinkelried, *The need to amend, supra* at 1468.

NW2d 518 (1982), that might have been read to require the formulaic approach of *United States v Sampson*, 980 F2d 883 (CA 3, 1992),[17] we expressly rejected the concept that the key to admissibility under Rule 404 rests on the incantation of magic words in *VanderVliet, supra* at 65-67. To be sure, the proponent of evidence who fails to demonstrate relevance runs the risk that the trial court will exclude the evidence. However, and quite obviously, if the evidence is admitted, the question on review is not what the prosecutor said, but whether it was error to admit the evidence. If the rule were otherwise, the prosecutor's inarticulate formulation of a theory would cause reversal on appeal though the evidence was properly admitted. *People v Engelman*, 434 Mich 204, 223, n 27; 453 NW2d 656 (1993).

### 1. THE LEGAL PRECEDENT: THE INCLUSIONARY APPROACH

Rule 403 places the burden on the opponent of the admissibility of logically relevant evidence to effectuate the liberal philosophy of Rule 402 favoring admission of all relevant evidence. Thus, the construction of Rule 404(b) "as a sentinel at the gate," *ante* at 390, ignores that

> the prosecution [should not be deprived] of evidence with multiple utility; if, indeed, there were a justification for receiving evidence of the nature of prior acts . . . to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," . . . . Rule 404(b) guarantees the opportunity to seek its admission. [*Old Chief, supra* at 190.]

---

[17] In point of fact, the court urged careful consideration of the theory of admissibility. It did not hold that failure to articulate the correct theory would require reversal on appeal.

To hold otherwise is to effectively resurrect the common-law rule of exclusion and reject the approach that "[t]he exclusion of relevant evidence under rule 403 is an extraordinary remedy, and therefore courts should exercise the power to exclude cautiously and sparingly." Imwinkelried, *The need to amend, supra* at 1478.

The majority's suggestion that the prosecutor's failure to carry its burden to demonstrate a proper theory deprives the evidence of probative force conflicts with the policy of Rule 402 that expressly declares this Court's support of inclusionary admissibility. The majority's statement that "[t]he general rule is more easily stated than applied," *ante* at 383, is also a distortion of the language of the rule and of our prior precedent. The "general rule" is not that such evidence is inadmissible. The general rule, as most recently recognized in *People v Starr*, 457 Mich 490; 577 NW2d 673 (1998),[18] is that, like all other evidence, such evidence is admissible if relevant under Rules 401 and 402. The majority's initial premise thus misconstrues both Rules 403 and 404 and rests on a premise that has been expressly overruled. *VanderVliet, supra* at 64.

If the majority seriously contends that the prior acts evidence was irrelevant to the proposition whether it is more or less likely that defendant did not possess the drugs with knowledge, or that he did not intend to distribute them, the majority's conclusion is, as noted, nothing less than remarkable. The majority purports to recognize that all evidence that

---

[18] *Starr* was authored by Justice WEAVER and signed by Chief Justice MALLETT and Justices BOYLE and TAYLOR.

is logically relevant, that is, that makes more probable than not a fact in issue, is admissible, but nevertheless concludes that the prior act was "mere character evidence masquerading as evidence of 'knowledge' and 'intent.' " However, it is possible that the majority simply does not understand the theory it employs. Evidence supporting this explanation for the majority's conclusion can be found in the statements that the question is whether there is some "intermediate inference" and that "no such intermediate inference has been established." *Ante* at 391-392. The reason prior acts evidence relevant to state of mind is so universally admitted[19] is that it does not require any ultimate inference regarding the defendant's conduct (the ultimate inference), and it does not require any inference regarding propensity (the intermediate inference). What the majority seemingly fails to understand is that, as recognized in *People v Engleman, supra,* and *VanderVliet, supra* at 85, an intermediate noncharacter inference is required only where the prior act is offered to prove conduct. As noted by 22 Wright & Graham, Federal Practice & Procedure, § 5242, pp 487-488, in the case of intent, the use of other crimes evidence can be defended on

---

[19] All federal circuits allow prior misconduct to be admitted for purposes of showing intent when the crime is a specific-intent crime such as possession with intent to deliver a controlled substance. See *United States v Mitchell,* 311 US App DC 35; 49 F3d 769 (1995); *United States v Rubio-Estrada,* n 4 *supra* at 848; *United States v Pitre,* 960 F2d 1112, 1119 (CA 2, 1992); *United States v Sampson, supra* at 887; *United States v Tedder,* 801 F2d 1437, 1444 (CA 4, 1986); *United States v Hooker,* 997 F2d 67, 76-77 (CA 5, 1993); *United States v Johnson,* 27 F3d 1186, 1193 (CA 6, 1994); *United States v Merriweather,* 78 F3d 1070, 1077 (CA 6, 1996); *United States v Smith,* 995 F2d 662, 672 (CA 7, 1993); *United States v Lewis,* 759 F2d 1316, 1349 (CA 8, 1985); *United States v Adrian,* 978 F2d 486, 492 (CA 9, 1992); *United States v Doran,* 882 F2d 1511, 1524 (CA 10, 1989); *United States v Perez-Garcia,* 904 F2d 1534 (CA 11, 1990).

two grounds, it does not require inference to propensity and involve any inference to the defendant's conduct. To the extent that the majority believes that Rule 404 always precludes other acts evidence unless an intermediate inference to noncharacter is demonstrated, it is incorrect. Either ground allows other acts evidence to escape the common-law prohibition. Plainly put, Rule 404(a) is avoided when the ultimate inference is not to conduct, or the ultimate inference is to conduct but the intermediate inference is to noncharacter.

However, because every federal circuit interpreting the rule repudiates the analysis employed by the majority regarding intent,[20] as has this Court, we are unable to conclude that the analysis employed is simply an honest mistake. Moreover, the majority's references to *Allen, supra,* suggest that the explanation for its holding is not a matter of misunderstanding. To effectuate the directive of liberal admissibility and nonintervention in trial court discretion, the proper inquiry on review is not whether there are multiple inferences, but whether the jury can make one inference that does not include character as a necessary link. What the majority is actually doing when it says that the evidence demonstrated only the "defendant's propensity to form a certain mens rea," *ante* at 397, is to heighten the burden of admissibility under Rule

---

[20] See *United States v Merriweather,* n 19 *supra* at 1078, for this proposition. To prove intent, noted Judge James Ryan, "other acts evidence is admissible, subject of course to Rule 403 balancing, under Rule 404(b) if specific intent is a statutory element of the offense." Listing nine other circuits in addition to the United States Court of Appeals for the Sixth Circuit that recognize this principle, Judge Ryan stated, "[u]nder this line of authority . . . [the evidence was] admissible for a legitimate purpose: to prove Merriweather's specific intent to distribute cocaine."

404(b) to relevance "plus." Given the directive of Rule 403, that it is the opponent's burden to overcome the admission of relevant evidence, the conclusion is inescapable that the majority's actual purpose is to retake ground ceded by the rules to the jury and the trial bench.

The Court made the rule. Moreover, there is no claim made here that what the Court made it cannot "unmake."[21] What cannot be honestly claimed, however, is that the majority is faithfully applying the inclusionary approach of our Rules of Evidence.[22]

### 2. MULTIPLE UTILITY: AVAILABLE INFERENCES

Authority admitting such evidence is legion. However, we begin detailed analysis of the majority's contention that there is no inference other than to character with an extensive quotation from the en banc decision of the Circuit Court for the District of Columbia, *United States v Crowder (Crowder I)*, 318 US App DC 396, 402; 87 F3d 1405 (1996), on reconsideration of its original holding excluding the evidence of a prior sale of drugs in a drug case, vacated in light of *Old Chief, supra*, by the United States Supreme Court.

In *United States v Crowder (Crowder II)*, 329 US App DC 418, 423-426; 141 F3d 1202 (1998), the court noted the multiple utility of Rule 404(b) and reversed the prior decision holding that,

---

[21] See *People v Starr, supra* at 502, n 12, citing *People v Kreiner*, n 12 *supra* (the Michigan Rules of Evidence constituted a codification of the Rules of Evidence that supersedes the common-law rules).

[22] Imwinkelried argues that rather than undermining the policy of the rules by evading Rule 404(b), the rule should be amended to place the burden on the proponent. *The need to amend, supra* at 1499.

defendant's offer to stipulate to an element of an offense does not render the government's other crimes evidence inadmissible under Rule 404(b) to prove that element, even if the defendant's proposed stipulation is unequivocal, and even if the defendant agrees to a jury instruction of the sort mentioned in our earlier opinion. See [*Crowder I* at 402. The court observed that] [o]ther rules of evidence may bear on the admissibility of evidence satisfying Rule 404(b) . . . . For now it is enough to repeat the words of the advisory committee on Rule 404(b): if evidence is offered for a purpose Rule 404(b) permits, such as proving knowledge or intent, Rule 404(b) "does not require that the evidence be excluded."

\*     \*     \*

The Supreme Court made these points to distinguish between "stipulations to the status element of a crime, which can be forced upon the prosecution, and stipulations to other elements of a crime, which the prosecution should remain free to reject." . . . Proof of status, the Court said, concerns an element that is "wholly independent[] of the concrete events" of the charged crime. *Old Chief* [519 US 190]. In contrast, the elements of intent and knowledge are at the core of the offenses charged in the cases before us. Replacing proof of these elements with stipulations creates "a gap in the story of a defendant's subsequent criminality." *Id.* [at 191]. To be sure, other crimes evidence will typically relate to events more or less removed in time from the charged offense. But that is true of many other kinds of evidence. A husband's prior physical abuse of his wife while he was in a jealous rage may suggest his motive for murdering her; an incriminating statement made after the offense may reveal intent; tangible evidence found later may suggest identity. Evidence about what the defendant said or did at other times can be a critical part of the story of a crime, and may be introduced to prove what the defendant was thinking or doing at the time of the offense. This is true regardless whether the defendant's actions on those other occasions were in themselves criminal. *Old Chief* estab-

lishes that the prosecution cannot be forced to stipulate away the force of such evidence.

\*          \*          \*

The government's proof of Crowder's other crime also had legitimate probative force with respect to matters beyond those encompassed in his proposed stipulation. A "piece of evidence," the Court wrote in *Old Chief,* "may address any number of separate elements, striking hard just because it shows so much at once," [*id.* at 187]. Rule 404(b) evidence will often have such multiple utility, showing at once intent, knowledge, motive, preparation and the like. Proof of an individual's intent to commit an act may itself serve as proof that the individual committed the act, as the Supreme Court recognized more than a century ago. See *Mutual Life Ins Co v Hillmon,* 145 US 285, 296; 12 S Ct 909, 912-913; 36 L Ed 706 (1892). In proving that a defendant intended to distribute crack cocaine, for instance, the government might simultaneously be showing the defendant's motive to possess the crack, which Rule 404(b) permits. Intent would thereby serve as an intermediate fact from which the jury could infer another intermediate fact—motive—from which it could in turn infer the element of possession. Thus, other-offense evidence of intent would have probative value not just on the intent element, but also on the possession element of the offense.

\*          \*          \*

The familiar language of Rule 403 is: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." In these cases, the concern about "prejudice" focused on the danger of the jury using the other crimes evidence in a way the rules do not permit—to conclude that because the defendant committed some other crime, he must have committed the one charged in the indictment. This danger, of course, will be present in every Rule 404(b) case. But that alone cannot give rise to a per se rule of exclusion, as Crowder and Davis argued when we first heard their cases en banc. In adopting the Federal Rules of Evidence, Con-

gress "was not nearly so concerned with the potential preju-
dicial effect of Rule 404(b) evidence as it was with ensuring
that restrictions would not be placed on the admission of
such evidence." *Huddleston* [*v United States*], 485 US [681]
688-689 [108 S Ct 1496; 99 L Ed 2d 771 (1988)]; see also H.
R. Rep No. 93-650 at 7 (1973) (noting that Rule 404(b)'s sec-
ond sentence is intended to place emphasis on admissibil-
ity). As to Rule 403, each case will turn on the discretionary
judgment of the trial court and its assessment, not of rele-
vance, but of the evidentiary value of the government's Rule
404(b) evidence. On the same side of the balance, the trial
court will take into account the effect of a limiting jury
instruction to protect the rights of the accused. See Fed R
Evid 403, advisory committee notes.

The majority's analysis of Rule 404(b) is fundamen-
tally at odds with the inclusionary approach
expressed in *Crowder*, unanimously endorsed by this
Court in *VanderVliet*, and by the United States
Supreme Court in *Old Chief, supra*. Rule 404(b) guar-
antees the opportunity to seek the admission of evi-
dence relevant to an issue other than character, *Old
Chief, supra* at 190. The admissibility of the evidence
is to be determined by the trial court on a sensitive
case-by-case balancing under Rule 403. The exercise
is necessarily ad hoc, reversible on appeal only for an
abuse of discretion. The majority's approach repudi-
ates these fundamental propositions and undermines
the trial court's authority to gauge the likely effect of
the evidence in the particular context presented.

### 3. MULTIPLE UTILITY: ANALYSIS OF AVAILABLE INFERENCES

The majority does not question that a general
denial allows proof of the extrinsic act.[23] Defendant

---

[23] "[A]*ll* elements of a criminal offense are 'in issue' when a defendant
enters a plea of not guilty. The prosecution must carry the burden of prov-

Crawford *raised* a mere presence defense that specifically challenged the prosecution's proofs of constructive possession with intent to distribute by creating a material issue that put his state of mind at issue. *United States v Adrian*, 978 F2d 486 (CA 9, 1992).[24] Defendant's denial by affirmative evidence that he knew the cocaine was in the car was a direct challenge to two mental states essential to sustain a conviction. It was a direct denial of the element of knowing possession and intent to distribute in the principal charge. Under the cognate charge of possession, it was also a direct challenge to whether he intended to distribute some or all the drugs. *United States v Thomas*, 58 F3d 1313 (CA 8, 1995).

The instant case, like *United States v Rubio-Estrada*, 857 F2d 845 (CA 1, 1988), is a "fairly typical instance" of a drug offense. While the majority professes not to know how the evidence of defendant's prior act made more likely his intent and knowledge in the instant case, the analysis is not complex. Evidence of defendant's experience in dealing drugs was probative of knowledgeable possession and of intent to distribute. For example, in a case where the defendant contested whether he knew drugs were in the freezer room or under the chicken coop of the farmhouse where he lived, the court identified the inference as

---

ing every element beyond a reasonable doubt, regardless of whether the defendant specifically disputes or offers to stipulate any of the elements." *People v Mills*, 450 Mich 61, 69-70; 537 NW2d 909 (1995) (citations omitted). See *Old Chief, supra*.

[24] "Adrian was charged with . . . possession with intent to distribute marijuana. His intent was thus a material issue in the case." *Id.* at 492.

one who lives on a farm with marijuana in the freezer room and under the chicken coop and has a prior possession conviction is more likely to know about the presence of marijuana than one who lives on such a farm and does not have a past possession conviction. . . . The jury might have thought a past possessor is more likely to associate with those who use and keep and talk freely about nearby marijuana; it might have thought a past possessor is more likely to spot marijuana under a chicken coop; it might have thought a past possessor is less likely to throw away marijuana if he comes across it. None of these inferences—all supporting a conclusion of "knowledge"—depends entirely upon the "bad character/propensity" chain of reasoning. . . . Thus, they escape the absolute bar of the Rule's first sentence. [*United States v Moccia*, 681 F2d 61, 63 (CA 1, 1982).]

Similarly, in *United States v Nickens*, 955 F2d 112, 124 (CA 1, 1992), the defendant, allegedly a respectable citizen traveling for recreational and medical reasons, claimed to be an innocent bystander duped by two young men who had offered to help him when he had difficulty on a trip to Ecuador. He contended that the young men, while purporting to help him, switched his suitcases for ones that contained concealed cocaine. The court recognized that a permissible inference that could be drawn from admission of a prior sale of cocaine was that

a person who has had experience in selling cocaine was more likely than one without such experience to know how drug traffickers operate. Such a person, the jury might infer, is more likely to be familiar with how to conceal cocaine and with false bottom suitcases, and is less likely

to have been fooled by seemingly friendly young men eager to come to the aid of a complete stranger.[25]

Because the jury might have drawn the permissible inference that a person who has had experience in selling cocaine was more likely than one without such experience to know how drug traffickers operate, the evidence was admissible under Rule 404(b):

> As the district court recognized, the two acts "merely involve[d] different steps in the narcotics distribution chain." While there is a possibility that jurors may draw impermissible inferences about defendant's character or propensity from the fact of his prior conviction, such a possibility is irrelevant to the first step of the admissibility analysis and to Rule 404(b)'s absolute ban. [*Nickens, supra* at 125.]

In *United States v Sampson, supra,* in which the defendant contended that he did not have knowledge of drugs found in his jacket, the court cited cases from every federal circuit, *id.* at 887, for the principle that where the defendant is charged with a drug offense, drug convictions are admissible to show that the defendant's acts were not without knowledge and intent. Finally, a classic formulation of the probative noncharacter inference is that of Judge Breyer in *Rubio-Estrada, supra,* where the defendant was

---

[25] See *United States v Rackstraw,* 7 F3d 1476, 1480 (CA 10, 1993). The court found evidence of prior acts probative of the issue of knowledge. The defendant claimed to be a naïve unsophisticated mechanic who had merely undertaken to deliver a car, unaware that it contained cocaine. The evidence of prior drug sales showed that he was intimately familiar with drug running in general and with dealers Williams' and Fisher's drug operation in particular. Thus, "[t]he evidence suggested that it was highly unlikely that Rackstraw was unaware that he was smuggling crack."

charged with possession to distribute cocaine found in his house and in which he claimed:

> "There is no real showing here . . . that this defendant knew that that substance was concealed up under his stairs." [*Id.* at 847.]

In words highly relevant to the case at bar, Judge Breyer observed:

> [A] person previously convicted of cocaine distribution is more likely than one not so convicted to know that electronic scales are used to measure cocaine for sale . . . . [S]uch a person is more likely to think that a white powder around the scales might be a substance used to cut cocaine . . . [and] a person . . . entering the downstairs closet to find his clothes (as the jury might have thought this defendant sometimes did), . . . is more likely than one not previously involved to think that some kind cocaine distribution operation is taking place in his house. . . . Any one of these sets of inferences make it logically somewhat more likely that defendant did know about the cocaine in his house and did intend to distribute it than one who did not have a prior conviction—or so the jury might reasonably believe. . . . The authority supporting admission of evidence of a past bad act, under circumstances such as those present here, is legion. [*Id.* at 847-848.]

Thus, in the instant case, the jury might have inferred that because the defendant had been convicted of cocaine distribution, he was more likely to have recognized that the visible scale, white powder, and a razor blade were tools of the narcotic trade than one who had not been so convicted. *United States v Nickens, supra.* It might have inferred that a person with such a prior conviction who discovered tools of the trade in his own car might be more likely to suspect that his car was being used for cocaine

distribution than one who had not. *United States v Rubio-Estrada, supra.* It might have inferred that a past possessor was more likely to associate with those who talked freely about the location of hidden cocaine. *Moccia, supra.* It might have inferred that a person with such knowledge would be more likely to be familiar with how to conceal cocaine in cars, *Nickens, supra,* and it might have inferred that a person with a prior conviction and such knowledge was more likely than one not previously involved to think that cocaine might be present in his car, more likely to look for it in a hidden spot and less likely to get rid of it if he came across it. *Moccia, supra.* Any one of these sets of inferences make it basically somewhat more likely that defendant did know about the cocaine in his car and did intend to distribute it than one who did not have a prior conviction, "or so the jury might reasonably believe." *Rubio-Estrada, supra* at 848.

### B. DOCTRINE OF CHANCES/FACTUAL NEXUS

Citing Imwinkelried,[26] the majority concludes that even if the evidence was relevant to mens rea, it fails

---

[26] The doctrine of chances or the objective-improbability approach endorsed by Imwinkelried as applied to the use of bad acts evidence for mens rea is a variation of that employed by the majority of federal circuits addressing the issue. The federal courts appear to apply a roughly similar limiting gloss to whether the prior act is admissible for purposes of knowledge and intent where the defendant presents an innocent explanation for his presence, i.e., innocent bystander, mere presence, or wrong place/wrong time, and denies knowing that drugs were, for example, in a room, *United States v Garcia,* 983 F2d 1160 (CA 1, 1993); *United States v Tomberlin,* 130 F3d 1318 (CA 8, 1997), a motor vehicle, *United States v Buchanan,* 70 F3d 818 (CA 5, 1995); *United States v Santa-Cruz,* 48 F3d 1118 (CA 9, 1995); *United States v Rackstraw,* n 25 *supra,* a boat, *United States v Molinares Charris,* 822 F2d 1213 (CA 1, 1987); *United States v Perez-Garcia,* n 19 *supra* or other location in proximity to the defendant, *United States v Curry,* 79 F3d 1489 (CA 7, 1996); *United States v Rogers,*

of admission under "the doctrine of chances." *Ante* at
395. Initially we observe that the majority does not
acknowledge that the principal holding of *VanderVliet*
is that when the issue is intent, the test of admissibil-
ity is whether the prior act is "sufficiently similar to
be relevant to intent under the theory of improbabil-
ity," *VanderVliet, supra* at 85, and "the improbability
that the other acts are an unlikely coincidence is rele-
vant to negate a claim of innocent intent." *Id.* at 85,
n 44.

Because the majority continues to ignore the
defendant's theory of defense, it also bears repeating
that the defendant's theory actually contested intent
to distribute by requesting a charge on mere posses-
sion. This fact alone would make the mental state in
issue, intent to distribute, a basis for admitting the
identical state of mind to show intent to distribute.
The majority ignores this defense and concludes that
it is not admissible on the issue of knowledge or
intent to distribute because there is an insufficient
nexus between the other acts evidence and the
charge in question.[27] The majority concludes that the

---

287 US App DC 1; 918 F2d 207 (1990). The consensus in the circuits
allows prior misconduct evidence to be admitted to show knowledge in
these circumstances, without explicit discussion of the doctrine of
chances.

[27] The majority cites a number of federal opinions in its support of the
proposition that federal courts require a close factual nexus between the
prior and charged crimes. *Ante* at 395, n 13. Analysis of the cases does not
support the majority's position that the nexus in this case is insufficient as
a matter of law.

The question of similarity is a question of relevance, which turns on the
precise facts of any given case. For example, in *United States v Rack-
straw*, n 25 *supra* at 1479, the court found persuasive the fact that all the
crack sales were within months of each other and that the sales in Fort
Worth were similar to the crack sales in Colorado because the method of
transportation was similar, the same drug was involved, and the defend-
ant was the middleman for drugs supplied by the same dealers. In this

case, the facts of both offenses were very similar. In *United States v Hernandez*, 84 F3d 931, 935 (CA 7, 1996), the court found that a March 1993 (1995 WL 23003 [ND Ill, 1995]) arrest for possession of forty-three pounds of marijuana hidden in an automobile and discovered when the defendant attempted to enter the United States at a border crossing was sufficiently similar to a March 1994 charge of possession of two kilograms of cocaine and one hundred grams of heroin hidden in a suitcase brought in by plane from Los Angeles to Chicago, to allow the prior act's admission. These acts were less similar than those in *Rackstraw*. The fact that both courts found sufficient similarity on both sets of facts indicates the diverse spectrum of facts that appellate courts must review and the case-by-case analysis they necessarily employ.

In *United States v Hernandez-Miranda*, 601 F2d 1104, 1107 (CA 9, 1979), the court found that there was no logical relevance between a prior conviction for smuggling marijuana across the border from Mexico in a backpack and a current charge of importing heroin from Mexico that was discovered at a border crossing concealed in the defendant's car under the fender well of the trunk's spare tire. Although the court found the admission of this evidence to be error, it did not find it prejudicial and affirmed the conviction on the strength of the other evidence presented. Hernandez-Miranda claimed that he had just purchased the vehicle; however, the court noted that he was in possession of his own car and inferentially everything else in it. Additionally, there was no evidence that someone else had hidden the heroin in the car, and the large amount of money that the heroin was worth negated the possibility that it had been placed in the car by accident or mistake. This case is, however, nearly twenty-years old and not in accord with more recent Ninth Circuit Court cases, see for example, *United States v Arambula-Ruiz*, 987 F2d 599 (CA 9, 1993); *United States v Santa-Cruz*, n 26 *supra*.

In the final case cited by the majority, *United States v Adrian, supra*, the district court denied the government's motion to admit the defendant's prior convictions, finding that the prior act only proved criminal disposition and that the prejudicial value outweighed the probative value. On interlocutory appeal, the United States Circuit Court for the Ninth Circuit disagreed, stating that intent was a material issue in a conspiracy with intent to distribute and possession with intent to distribute charge. The court stated that the "government [is] permitted to prove knowledge through proof of prior bad acts where knowledge [is] an element of the crime at issue. . . . Intent in prosecutions for possession of and intent to distribute narcotics may be demonstrated through evidence of prior possession and sale of narcotics. . . . Thus, the district court erred in holding that evidence of appellant's prior narcotics convictions tended only to prove a criminal disposition." *Id.* at 492. However, the court found the record insufficient regarding the similarity of the prior offense to the charged offense and was therefore unable to determine whether the district court had abused its discretion in excluding the evidence by finding that the danger of unfair prejudice was substantially outweighed by the

fact that defendant was a drug dealer in 1988 was too remote and too dissimilar from the instant charge to make it more likely than it would otherwise be that he knew of the drugs constructively possessed in the instant case, or that as to the drugs he possessed with knowledge, that he had no intent to distribute.[28]

The proofs established constructive possession of all the drugs, and the defense was a species of accident, that is, although the defendant was in constructive possession of the drugs, his possession was innocent and unknowing because he merely happened to be where the drugs were. Therefore, the principal argument was focused on knowledge of the hidden amount, and the secondary argument was that if defendant possessed some drugs, he did not intend to distribute them.[29] Mens rea or the mind at fault is the

---

probative value of the evidence. The court determined that the wiser course was to remand the case to allow the government to develop the record and to permit the district court to weigh the evidence. *Id.* at 493.

[28] The fact that the evidence is admissible for one purpose, but not another, does not make it inadmissible.

> [T]here is no rule of evidence which provides that testimony admissible for one purpose and inadmissible for another purpose is thereby rendered inadmissible; quite the contrary is the case. [For example], [i]t would be a strange rule of law which held that relevant, competent evidence which tended to show bias on the part of a witness was nonetheless inadmissible because it also tended to show that the witness was a liar. [*United States v Abel*, 469 US 45, 56; 105 S Ct 465; 83 L Ed 2d 450 (1984).]

Therefore, even if the majority concluded that the other acts evidence did not reflect a permissible inference of knowledge, the evidence was admissible because it was relevant with respect to a proper noncharacter theory of intent.

Nor is relevant evidence rendered irrelevant by the presence of other evidence probative of the same issue. *Old Chief, supra* at 178-179.

[29] Defense counsel in essence conceded during the motion in limine that defendant knew about the drugs. Further, the defendant did not deny ownership of the coat or wallet containing the baggies and cocaine resi-

opposite of innocent intent, which the defense asserted. Where the defendant denies any knowledge of the presence of drugs and asserts a mere presence defense, he is challenging both that he knew he was in possession and that he intended to distribute. *United States v Tomberlin*, 130 F3d 1318, 1320-1321 (CA 8, 1997).

Although the majority quotes Imwinkelried selectively for the proposition that courts should not routinely admit uncharged evidence on the issue of intent, Imwinkelried's discussion of other acts evidence to negate a claim of accident on a noncharacter theory merits more extensive quotation:

> Suppose that the accused is [charged] with possession of a contraband drug. To be wrongful, the possession must be knowing. On the occasion alleged in the indictment, the police discovered cocaine secreted in the trunk of a car driven by the accused. The accused admits the presence of the cocaine in his vehicle but denies mens rea—he claims that he did not know that the trunk contained cocaine.
>
> *        *        *
>
> At trial, the prosecutor proffers testimony that on two earlier occasions when the accused's vehicle was stopped by the police, the police found illegal drugs in the car. Under the doctrine of chances, the testimony is relevant to meet the accused's claim that his state of mind was ignorant and innocent. It is true that innocent persons sometimes find themselves enmeshed in suspicious circumstances. However, everyday experience indicates that that rarely occurs. The more frequently the accused is involved in such circumstances, the less plausible the claim of ignorance. The coincidence defies common sense and reduces

---

due. The defense attorney's closing argument urged the jury not to find the defendant guilty merely because he associated with people who used drugs and may have left drugs in his car.

the likelihood that the accused had an innocent mental state on all these occasions. Considered collectively, the charged and uncharged incidents strengthen the inference that the accused knew of the presence of the cocaine on the charged occasion. In short, just as uncharged misconduct can tend to show an actus reus, the evidence may be logically relevant to prove the existence of the requisite mens rea.

\*     \*     \*

The doctrine of chances does not ask the jury to forecast behavior on the basis of any assumption about character. Instead, the doctrine asks the jurors to do what the pattern jury instructions in many jurisdictions direct them to do, namely, employ their common sense and knowledge of the ways of the world to assess the relative plausibility of competing versions of the disputed events. [Imwinkelried, *A small contribution to the debate over the proposed legislation abolishing the character evidence prohibition in sex offense prosecutions*, 44 Syracuse L R 1125, 1132-1138 (1993).]

The doctrine of chances focuses on the trial court's assessment of the improbability that an individual would be innocently involved in similar activity. This theory of logical relevance does not depend on the intermediate inference of character, but, rather, rests on the objective assessment of the likelihood of fortuitous involvement. The majority correctly observes that Imwinkelried cautions against routine resort to the doctrine of chances[30] to admit misconduct evidence on the issue of intent. However, what the majority fails to acknowledge is that because Imwinkelried's view is that one prior act is sufficient,

---

[30] The doctrine should be cautiously employed because uncritical acceptance of the argument that uncharged misconduct is relevant to mens rea would rationalize admission as a matter of course.

as the previous quotation illustrates, it does not support the conclusion that illegal drugs found in the trunk would be inadmissible in a charged offense involving illegal drugs in a car. Imwinkelried's definition of the doctrine of chances offers a four-part test for admissibility. The test requires assessment of improbability, similarity but not identity of conduct, a temporal relationship between the prior act and the act charged, and a bona fide need for the evidence. Imwinkelried, *The use of evidence of an accused's uncharged misconduct to prove mens rea: The doctrines which threaten to engulf the character evidence prohibition*, 51 Ohio St L J 575, 597-600 (1990).

Imwinkelried states that in terms of logical relevance, even one act can be material.[31] The decisions should be made case by case, focusing on relative frequency rather than the absolute number of incidents. Imwinkelried, Uncharged Misconduct Evidence, § 5:06, p 14. The trial court must conclude that the evidence alters the probability that the defendant had the requisite state of mind at the time of the charged offense. However, "[i]f the ordinary incidence of innocent involvement in such situations would be only once per decade and the defendant has been involved in such situations twice within a decade that *extraordinary* coincidence triggers the doctrine of

---

[31] While noting that some courts and commentators have adopted the position that the proponent may not resort to the doctrine of chances to prove mens rea with evidence of only one similar act, Imwinkelried states that in terms of logical relevance, the contrary view, that even one act can be material "is more sound." The decisions should be made case by case, focusing on relative frequency rather than the absolute number of incidents. The proponent must convince the court that the evidence alters the probability that the defendant had the requisite state of mind at the time of the charged offense. Imwinkelried, Uncharged Misconduct Evidence, § 5:06, p 14.

chances." *Id.*, 1992 cum supp, § 5:06, p 125 (emphasis in the original).

### C. FEDERAL AUTHORITY: PRIOR ACTS FOR INTENT AND KNOWLEDGE

The federal circuits follow a roughly similar four-part test that appears to apply a limiting gloss without explicit reference to the doctrine of chances. The prior act or acts 1) must be relevant to a material issue other than propensity, 2) there must be sufficient evidence that defendant committed the other crime, 3) the probative value must not be substantially outweighed by prejudice, and 4) the other acts must be similar to and not too remote in time[32] from the crime charged. *United States v Curry*, 79 F3d 1489, 1495 (CA 7, 1996); *United States v Wiley*, 29 F3d 345, 350 (CA 8, 1994); *United States v Rubio-Villareal*, 927 F2d 1495, 1503 (CA 9, 1991); *United States v Perez-Garcia*, 904 F2d 1534, 1539 (CA 11, 1990).

For example, in *United States v Hernandez*, 84 F3d 931, 935 (CA 7, 1996), the United States Court of Appeals for the Seventh Circuit considered a case in which the defendant, on deplaning at Chicago's O'Hare Airport from Los Angeles, denied that a suitcase containing two kilograms of cocaine and one hundred grams of heroin belonged to him. The gov-

---

[32] The trial bench has broad discretion to determine whether the prior acts meet the similarity requirement, see *United States v Rogers*, n 26 *supra*; *United States v Thomas*, and *United States v Tomberlin, supra*, and have not established an absolute maximum regarding the number of years that separate the offense charged and the prior act, see *United States v Ismail*, 756 F2d 1253, 1258-1260 (CA 6, 1985), and cases cited therein, *United States v Moore*, 98 F3d 347, 350 (CA 8, 1996) (seven years is not too remote); *United States v Tomberlin, supra* (ten years is not too remote).

ernment offered evidence of prior misconduct for purposes of knowledge, intent, and absence of mistake. In the prior act, the defendant was arrested at the border for possession of forty-three pounds of marijuana in his car. The court agreed that the evidence was admissible. Although different drugs were involved and different methods employed, the similarity requirement was met for Rule 404(b) purposes because both incidents concerned distribution amounts of drugs and illegal transport. The court also stated that the temporal element was a "gimme" because of prior holdings in the circuit indicating that seven years was sufficiently close for Rule 404(b) purposes.

The court concluded that the forty-three pounds of marijuana hidden in the automobile—clearly a distribution amount—was relevant to show intent to distribute the other distribution amount found in his suitcase, stating that the prior possession tended to show that Hernandez was "not some hapless fool mistakenly caught up in an overzealous law enforcement action." *Id.* at 935.

Similarly, in *United States v Ferrer-Cruz*, 899 F2d 135 (CA 1, 1990), the defendant claimed that the evidence showed only that he was present where cocaine was found, but that it did not show that he knew there was cocaine at that location. The trial court admitted a prior conviction of possession of cocaine and marijuana on the basis of the government's claim that the evidence showed Ferrer had knowledge that the bags in the car contained drugs and his intent to consummate a drug sale. On appeal, through Judge Breyer, the Court of Appeals agreed, noting that one who has previous experience with

drugs is more likely to see car switching as part of a drug sale technique and to recognize and know that the contents of the bags in the car contained drugs than someone without that experience.[33]

The majority finds an insufficient nexus between the prior conviction and the charged offense. However, if not an "unlikely coincidence," *VanderVliet, supra,* it is surely an "extraordinary coincidence" that someone else left drugs in defendant's car within ten months of his release from prison for similar misconduct.[34] The relationship between the offenses was neither too dissimilar nor too remote to preclude the inference of nonaccidental possession.

In sum, the majority simply declines to recognize that its analysis is inconsistent with the Imwinkelried test and with all federal courts applying Rule 404(b). Further, the majority's conclusion is at odds with the holding of this Court in *People v VanderVliet.* Rule 404(b) does not require a high level of similarity between the proffered other acts evidence and the acts charged with respect to the issue of intent. The majority resorts to similarity in support of the notion that Rule 404(b) is a "sentinel at the gate." However disguised, the majority's conclusion is a repudiation

---

[33] The court observed that the government was required to show more than mere presence in a car with cocaine in order to prove the knowledge and intent needed to make that presence a crime. Pertinently, the court also noted that the "Rule's framers considered the pros and cons of absolutely banning evidence of this sort," and they concluded that the evidence survives an absolute ban "as long as at least one permissible inference is possible." *Ferrer-Cruz, supra* at 138.

[34] See *United States v Hernandez,* 896 F2d 513, 522-523 (CA 11, 1990). Because Hernandez spent much of the interim time in prison between his prior conviction and the current charge, and by his own admission was on probation when arrested, the court found that the six-year period between offenses did not depreciate the probity of the extrinsic offense.

of the principle that particular numbers need not be spun, or particular pigeonholes filled, before the door to admissibility swings open. The majority's doctrine of chances analysis is simply a reassertion of the notion that Rule 404(b) is a rule of exclusion.

IV

ABUSE OF DISCRETION

We also disagree with the majority that the evidence was substantially more prejudicial than probative under the Rule 403 balancing test.[35] This is not to say that in a given case the trial court could not conclude that other proofs, such as admissions or other tools of the trade such as a beeper, scale, baggies, and cocaine residue were so probative that the bona fide need for the other evidence was minimal. The inference of general mens rea or specific intent from other evidence in the case may render the "bad" acts cumulative under Rule 403. Imwinkelried, Uncharged Misconduct Evidence, *supra*, § 5:09, p 23. Stated otherwise, had the jury found possession and knowledge, the amount of the drugs itself would provide convincing evidence of intent to distribute. However, as the court observed in *Nickens, supra,* "Although the government's case was strong without the prior conviction, who is to say that it would have carried the day had the conviction been left out?" *Id.* at 125. The

---

[35] See *Williams v Nebraska State Penitentiary,* 57 F3d 667, 670 (CA 8, 1995). There is no automatic requirement that a district court exclude evidence more prejudicial than probative. The term used is that the court "may exclude" prejudicial evidence. The language is permissive and is a reminder that when reviewing Rule 403 determinations, the appellate court's task is not to reweigh these prejudicial and probative elements, but to determine if the trial court "clearly abused its discretion in admitting the evidence."

defendant's defense of intermittent possession of the car during the week he owned it appears to impress the majority and could have created a doubt regarding control sufficient to constitute possession of the hidden drugs. Had the jury concluded defendant had possession of some or all the drugs, as the defendant claimed on the cognate charge, it might have concluded he did not intend to distribute them. There was no direct evidence of state of mind, such as an admission by defendant, testimony of uninterrupted possession, or of a witness directly connecting defendant to placing the drugs in the car that would have had the same probative value as the prior act. The size of the cache as well as the tools of the trade might have been as probative of intent to deliver as was the prior act. They did not have substantially equivalent probative force with respect to the issue of possession or knowledge of the hidden cocaine.

When reviewing evidentiary decisions under MRE 401 and 403, our review is limited to whether the decision was an abuse of discretion.[36] The trial court's decision to admit other acts evidence under Rule 404(b) is not reviewed under a de novo standard. As

---

[36] The majority of federal circuits are in accord with this standard of review. *United States v Watson*, 282 US App DC 305, 309; 894 F2d 1345 (1990); *United States v Garcia*, n 26 *supra* at 1172; *United States v Mark*, 943 F2d 444, 447 (CA 4, 1991); *United States v Mazzanti*, 888 F2d 1165, 1169 (CA 7, 1989); *United States v Tomberlin*, *supra* at 1320; *United States v Khan*, 993 F2d 1368, 1376 (CA 9, 1993); *United States v Suntar Roofing, Inc*, 897 F2d 469, 479 (CA 10, 1990); *United States v Perez-Garcia*, *supra* at 1539.

As the United States Court of Appeals for the Seventh Circuit has recognized, defendants carry a " 'heavy burden on appeal because an evidentiary ruling will be reversed only if a trial court committed a clear abuse of discretion, . . . a . . . reviewing court gives special deference to the evidentiary rulings of the trial court.' " *Mazzanti, supra* at 1169.

we observed in *People v Bahoda*, 448 Mich 261, 289; 531 NW2d 659 (1995):

> "[C]lose questions arising from the trial judge's exercise of discretion on matters concerning the admission of evidence do not call for appellate reversal because the reviewing justices would have ruled differently. Reversal is warranted only if the resolution of the question by the trial court amounted to an abuse of discretion. The decision upon a close evidentiary question by definition ordinarily cannot be an abuse of discretion." [*People v Golochowicz, supra* at 322.]

While there is no doubt that all prior misconduct carries the potential for unfair prejudice, appellate courts are properly reluctant to overturn the decisions of the trial courts if the activity was not so inflammatory as to unduly divert attention from the case[37] or involved conduct any more sensational or disturbing than the narcotics charge that the defendant was currently facing.[38]

Contrary to the majority's claim that the trial court overvalued the probativeness of the evidence, *ante* at 398, n 15, the majority's failure to acknowledge that the evidence was probative of both knowledge and specific intent results in the undervaluing of its probative force.

The majority's rejection of the trial court's balancing under Rule 403 and its assertion of a "heightened need for the careful application of the principles set forth in MRE 403," *ante* at 398, substitutes the appellate judgment for that of the trial court. The evidence

---

[37] *United States v Edwards*, 91 F3d 1101, 1104 (CA 8, 1996).

[38] *United States v Pitre*, n 19 *supra* at 1120.

was admissible under a noncharacter theory,[39] and we must assume the jury used it for its proper purpose. *People v Hana*, 447 Mich 325, 351; 524 NW2d 682 (1994).

V

HARMLESS ERROR

Even if persuaded that the trial court abused its discretion in admitting the other bad acts evidence, we would find that the error was harmless.

In *People v Mateo*,[40] we recognized that MCL 769.26; MSA 28.1096[41] was not a usurpation of our authority and that a "miscarriage of justice must affirmatively appear on review of nonconstitutional preserved error." *Id.* at 221. We further noted that review for nonconstitutional error was not harmless beyond a reasonable doubt and that those courts denying relief where the preserved error had "only slight or negligible influence on the verdict have proceeded cor-

---

[39] *United States v Rogers*, n 26 *supra*; *United States v Garcia*, n 26 *supra*; *United States v Pitre*, n 19 *supra* at 1119-1120; *United States v Wright-Barker*, 784 F2d 161, 174 (CA 3, 1986); *United States v Mark*, n 36 *supra*; *United States v Buchanan*, n 26 *supra* at 831-832; *United States v Ismail*, n 32 *supra* at 1259; cf. *United States v Johnson*, n 19 *supra* at 1193-1194; *United States v Hernandez*, *supra*; *United States v Edwards*, n 37 *supra* at 1104; *United States v Arambula-Ruiz*, n 27 *supra* at 604; *United States v Rackstraw*, n 25 *supra* at 1480; *United States v Perez-Garcia*, n 19 *supra*. Cf. *United States v Williams*, 816 F2d 1527, 1532 (CA 11, 1987).

[40] 453 Mich 203; 551 NW2d 891 (1996).

[41] A new trial may not be granted in any criminal case on the ground of improper admission of evidence unless it affirmatively appears that the error complained of resulted in a miscarriage of justice. See also MCR 2.613(A) (an error in the admission of evidence is not ground for granting a new trial unless refusal to take this action is inconsistent with substantial justice).

rectly." *Id.* We did not adopt a definitive standard of review.

In federal courts, the prosecutor must show, after pondering all that happened and without stripping the erroneous action from the whole, that the verdict was not substantially swayed by nonconstitutional error. *Kotteakos v United States*, 328 US 750; 66 S Ct 1239; 90 L Ed 1557 (1946). Substantial rights must be affected, and reversal of the verdict is required only if the nonconstitutional error resulted in actual prejudice because it " 'had substantial and injurious effect or influence in determining the jury's verdict.' " *United States v Lane*, 474 US 438, 449; 106 S Ct 725; 88 L Ed 2d 814 (1986).

By contrast, whether error is preserved or not, the Michigan statute under any definition requires that a miscarriage of justice affirmatively appear. MCL 769.26; MSA 28.1096.[42] It follows that Justice WEAVER correctly held, concurring in both *Mateo*[43] and *Gearns*, that there is a presumption that the error is harmless and that the "defendant should have the burden of showing why the judgment should be overturned." *People v Gearns*, 457 Mich 170; 577 NW2d 422 (1998). Since the statute must be applied completely, including the allocation of the burden, the level of confidence cannot be that defined in *Kot-*

---

[42] Justices BRICKLEY's and CAVANAGH's opinions in *People v Gearns*, 457 Mich 170; 577 NW2d 422 (1998), would appear to rest on the premise that the Legislature may not require that a defendant demonstrate prejudice.

[43] Justice WEAVER stated that the Court has recognized this burden on the defendant in the past. A lawful conviction negates the presumption of innocence. On review, the burden is on the defendant to disclose error requiring reversal. Similarly, when a defendant enters a guilty plea and appeals, the defendant has the burden of showing a miscarriage of justice. *Mateo, supra* at 222.

*teakos*, i.e., that prejudice did not occur. Rather, the court must be persuaded that prejudice, as defined in *Kotteakos*, was caused by the error. In short, the defendant must show by at least a preponderance of the evidence that the preserved error *did* have a "substantial and injurious effect or influence in determining the jury's verdict."

Despite our disagreement, we recognize that four justices in two separate opinions,[44] have recently held that the prosecution must show it is highly probable that the evidence did not contribute to the verdict. *People v Gearns, supra.* Applying this standard, we would find that the error is harmless because it is highly probable that the disputed evidence did not affect the verdict.

The following inculpatory evidence was properly admitted at trial: routine pat down of the defendant revealed a beeper, a ziplock baggie in defendant's wallet, and $455, mostly in ten and twenty dollar denominations. The car owned by the defendant contained a mobile phone and a digital scale. A razor blade was found within the box holding the digital scale, which had cocaine residue on it. A jacket belonging to the defendant, located on the back seat, contained six ziplock baggies bearing cocaine residue as well as doper fold papers. The jury was given limiting instructions regarding the proper use of prior acts evidence at the beginning of the trial and again at the end of the trial.[45] See ns 7 and 8. The majority com-

---

[44] Justice BRICKLEY was joined by Chief Justice MALLETT and Justice CAVANAGH was joined by Justice KELLY. *People v Gearns, supra.*

[45] The majority does not seem to recognize the importance of these jury instructions and virtually ignores them. The majority states that the risk created by the "reverberating clang" of the other acts evidence drowns the

pletely fails to explain how the prior acts evidence harmed the defendant. Any error in admitting the prior acts evidence was slight or negligible. *Mateo, supra* at 221. Defendant has not met his burden of proving that the conviction was a miscarriage of justice or that the refusal to grant a new trial is inconsistent with substantial justice.

## CONCLUSION

The majority disregards the deference due trial courts in admitting other acts evidence and instead determines that there is an insufficient factual nexus between the prior conviction and the present charged offense. It invokes the slippery slope and fails to acknowledge that the structure and philosophy of the rules require only relevancy. *United States v Procopio*, 88 F3d 21, 29 (CA 1, 1996). As the court articulated this concept in *United States v Latney*, 323 US App DC 417, 420; 108 F3d 1446 (1997):

> [T]he strength of the evidence is a different matter than its relevancy. So long as the evidence makes a fact of consequence more or less likely, it is relevant. That the evidence is not conclusive, or even nearly so, is of no moment. "[M]ost convictions result from the cumulation of bits of proof which, taken singly, would not be enough in the minds of a fairminded person." . . . When it comes to rele-

---

"weaker sound" of the other evidence before the jury. *Ante* at 398-399, citing *Merriweather*, n 19 *supra*. Concerning the value of the jury instructions and their effect on the risk caused by the "reverberating clang" of other acts evidence, Judge Ryan stated in *Merriweather*, n 19 *supra* at 1077:

> The magnitude of that risk might well have been reduced by a clear and concise instruction identifying for the jurors the specific purpose for which the evidence was admissible and limiting their consideration to the evidence to that purpose.

vancy, however, there is no sliding scale. The "item is either relevant or it is not; there is no in-between."

The slippery-slope analysis simply reflects the majority's substitution of its determination of relevancy for that of the trial court as it shifts the burden under Rule 403 from the defendant to the government. *Ante* at 398, n 15. The trial court did not abuse its discretion in finding the evidence more probative than prejudicial. The evidence was circumstantial, but more than sufficient to show guilt beyond a reasonable doubt, without the challenged testimony.

For the foregoing reasons, we would affirm the decision of the Court of Appeals.

WEAVER and TAYLOR, JJ., concurred with BOYLE, J.

APPENDIX

COLLOQUY DURING HEARING ON MOTION IN LIMINE

MAY 17, 1993

*The Court*: (Interposing) Which is an element but there are other hurdles to jump before we get to that.

*Mr. Fenton* [defense attorney]: Your Honor, I believe that first of all, the act was different. That was a buy. That was a direct buy in that particular case in 1988. That was a delivery of the controlled substance on that particular occasion. This, there's no delivery. It's a traffic stop. Some nine hours later, they find a controlled substance hidden behind the glove box, not in the glove box but roughly in the area behind the glove box. I don't believe that that is . . . [.]

*The Court*: (Interposing) Are you arguing that they can't show intent, that this is the—he had no intent to deliver? And that's one of the key elements of the delivery, right, is the intent?

*Mr. Fenton*: Possession with intent to deliver which he is charged with. Your Honor. I don't believe they can show it

with a similar act. I think the prejudicial value outweighs the probative value in this particular case. It's almost tantamount to telling the Jury that he's guilty in this particular case.

*The Court*: What was he guilty of in the prior situation? Everybody agrees he was guilty of something. What was he guilty of?

*Mr. Stablein* [prosecutor]: Delivery between 50 and 225 grams—I'm sorry—225 to 650 and conspiracy were the two Counts in that Information, Judge, in 1989 when he was convicted.

*The Court*: So the argument here is that an element would be he mainly is in possession. I assume that you're not disputing possession?

*Mr. Fenton*: I am disputing possession, Your Honor.

*The Court*: You're saying he didn't know he had possession?

*Mr. Fenton*: That is correct.

*The Court*: So you're saying knowledge is necessary for possession then, am I correct? Is that an element.

*Mr. Fenton*: I would think so.

*Mr. Stablein*: It says knowingly possessed, Judge. It definitely is an element.

*The Court*: Okay. And so that would appear to be relevant to the issue? I mean obviously if he didn't have knowledge, he couldn't conceivably possess.

If it was there by accident or somebody put it there without his knowledge—am I correct on my supposition? That's your argument, Mr. Fenton?

*Mr. Fenton*: Yes. And I base it on a case, Your Honor.

*The Court*: Okay. And so you were trying to then establish that he did have knowledge of possession because of his prior acts, am I correct on that, Mr. Stablein?

*Mr. Stablein*: Yes, Your Honor. A clear, I think, issue in this case is going to be knowledge because the cocaine was so well hidden. I believe that the defense is going to be that he didn't know . . . [.]

*The Court*: (Interposing) As I understand 404B, there's really a laundry list or a check list that you can follow. You

have to specifically identify the controverted facts. And apparently as I understand the controverted facts are that you say your client had no knowledge whatsoever of the— so he couldn't even be in possession much less with an intent to deliver. Am I correct on that?

*Mr. Fenton:* Of the amount that was found behind the glove box. Correct.

*The Court:* Okay. Well, see did he have knowledge of any? Forget about the amount. Did he have knowledge of any cocaine?

*Mr. Fenton:* There was a small—I can't say small residue but allegedly according to the police reports, that they found in a coat pocket less than—I think .16, not even a sixth of a gram.

*The Court:* The key is the amount.

*Mr. Fenton:* That is correct.

*The Court:* All right. And it's in dispute because you are arguing that he didn't know about it, he couldn't have it there. Obviously you're not put in the posture of having to prove your defense as the prosecution so has its burden of proof but I'm just trying to understand what attack we are making so that I can figure out what really is in dispute. And that would appear to be a dispute then, am I correct on that? That he didn't have knowledge that he had this amount of cocaine in his possession?

*Mr. Fenton:* He didn't have knowledge that there was cocaine. That's correct, Your Honor.

*The Court:* All right. And does anybody disagree that's relevant to the issue—the amount . . . [.]

*Mr. Stablein:* (Interposing) If I can't prove knowledge, the Defendant is not guilty of the crime.

*The Court:* Okay.

*Mr. Fenton:* Your Honor, they can have—they can still possibly have possession without . . . [.]

*The Court:* (Interposing) Okay. And so we did have the— no dispute at all that the Defendant did the prior act. Nobody is arguing about that, right?

PEOPLE V CRAWFORD
DISSENTING OPINION BY BOYLE, J.

*Mr. Fenton:* No, because he pled guilty to that and served time.