*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
May 13, 2021

v

MICQUEL SHEMARIO THOMAS,

Defendant-Appellant.

No. 349711
Kent Circuit Court
LC No. 19-002661-FH

Before: MURRAY, C.J., and FORT HOOD and GLEICHER, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of possession with intent to deliver methamphetamine, MCL 333.7401(2)(b)(*i*);[1] carrying a concealed weapon (CCW), MCL 750.227; and possession of a firearm by a felon (felon-in-possession), MCL 750.224f. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to concurrent sentences of 20 to 60 years' imprisonment for each offense. We affirm.

## I. FACTUAL BACKGROUND

This case arises out of a traffic stop that resulted in defendant fleeing from the stopped car while in possession of a firearm and methamphetamine. Darrell Oden, an acquaintance of defendant, was the driver of the vehicle that was stopped. Oden testified that he picked up defendant with the intention of purchasing marijuana from him, and thereafter, they were pulled over by Wyoming Police Officer Aaron Gray. Oden testified that Oden was driving, Oden's friend was in the passenger seat, and defendant was sitting in the backseat. Before pulling over, Oden thought defendant encouraged him to keep driving, but he could not completely recall. After Oden stopped in a grocery store parking lot, defendant jumped out of the car and ran. Oden testified that, before defendant jumped out of the car, "he moved a little bit," like "he was wiggling" around. Oden stated that he turned around after defendant fled from the car and saw the butt of a gun

---

[1] This conviction carried a double penalty enhancement for a controlled substance second or subsequent offense, MCL 333.7413.

underneath the passenger seat on the floorboard. Oden denied that it was his gun or that he had ever seen the gun before.

Relevant to this appeal are statements Oden made to Officer Gray that were introduced during Officer Gray's testimony:

*Q*. Okay. Did you ask [Oden] whether the defendant had stashed a gun?

*A*. Yes.

*Q*. And what did he tell you? What did Mr. Oden tell you?

*A*. Initially he told me that he was unsure, but he knew that [defendant] had stashed something under there and did believe it was a gun.

*Q*. [Oden] did believe it was a gun, correct?

*A*. Yes.

*Q*. Did you ask him whether it appeared to him [defendant] had concealed or fled with anything else?

*A*. Yes, he said [defendant] was also stashing something but [Oden] didn't see it, the stash was on [defendant's] person though.

*Q*. Before he fled.

*A*. Correct.

*Q*. All right. And so ultimately does [Oden] admit to you, let's say in the second interview, that the defendant had, in fact, stashed a gun under that seat?

*A*. Yes.

*Q*. And ultimately admits to you that he saw him conceal something, not sure what it was, before [defendant] fled. Correct?

*A*. Yes.

*Q*. Did you ask [Oden] whether the—did he indicate to you whether the defendant had asked him to keep driving or stop?

*A*. Yes.

*Q*. And what did he tell you about that?

*A*. [Oden] told me that the defendant told him to continue driving, in which [Oden] responded that he didn't want to flee, so he was going to pull over.

Officer Gray further testified that he noticed Oden's backseat passenger, later identified as defendant, "moving around quite a bit" while Officer Gray ran the license plate on the vehicle. While Officer Gray ran the license plate, defendant opened the rear passenger door, exited the car, and began running.[2]  According to Officer Gray, when defendant exited the car, "he was holding his waist area, whether he was holding his pants up or trying to hold something in, I wasn't sure." Officer Gray further testified that defendant wore dark colored pants and a "blue puffy jacket."

Several officers testified that methamphetamine was discovered by police in the direction that defendant fled.  Officer Gray testified the drugs were found inside an area enclosed with a barbed-wire fence.  Near the drugs, the barbed-wire portion of the fence was found broken and hanging toward the ground, and a piece of blue cloth was found attached to the wire.  Officer Gray testified that the cloth found on the fence matched the color of the jacket that defendant wore at the time he fled Oden's car.  Officer Gray also testified that the damage to the fence was consistent, from his experience, with damage that would occur when someone jumped a fence.  Sergeant Corey Walendzik further testified that the ground in the area was wet because it had been raining that day, and that the bag holding the methamphetamine was dry, as if it had been recently deposited.

## II. OTHER-ACTS EVIDENCE

Defendant first argues that the trial court abused its discretion by admitting other-acts evidence.  Specifically, defendant challenges the testimony of an undercover police officer who testified that he was involved in two, unrelated heroin transactions with defendant.  The undercover officer testified that, during the first transaction, the officer purchased $140 worth of heroin, or just under a half gram.  During the second transaction, the officer purchased $400 worth of heroin, or 1 or 1.5 grams.  The prosecutor sought admission of the undercover officer's testimony in order to evidence defendant's intent in the related charge of possession with intent to deliver methamphetamine in the instant case.

We review claims of evidentiary error for an abuse of discretion.  See *People v Bergman*, 312 Mich App 471, 482; 879 NW2d 278 (2015).  "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *Id*. at 483 (quotation marks and citation omitted).  "If the court's evidentiary error is nonconstitutional and preserved, then it is presumed not to be a ground for reversal unless it affirmatively appears that, more probably than not, it was outcome determinative—i.e., that it undermined the reliability of the verdict." *People v Douglas*, 496 Mich 557, 565-566; 852 NW2d 587 (2014) (quotation marks and citation omitted).

In order for evidence to be admissible under MRE 404(b)(1), "(1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; and (3) the probative value of the

---

[2] Officer Gray identified defendant as the individual that fled from the car on the basis that, during the encounter, defendant turned around to see where Officer Gray was located, and Officer Gray saw defendant's face.

evidence must not be substantially outweighed by [the danger of] unfair prejudice." *People v Danto*, 294 Mich App 596, 599; 822 NW2d 600 (2011) (quotation marks and citation omitted; alteration in original). This Court has described MRE 404(b)(1) as an inclusionary rule "because it provides a nonexhaustive list of reasons to properly admit evidence that may nonetheless also give rise to an inference about the defendant's character." *Id.* (quotation marks and citations omitted). " 'Evidence is *inadmissible* under this rule *only* if it is relevant *solely* to the defendant's character or criminal propensity.' " *Id.*, quoting *People v Mardlin*, 487 Mich 609, 615; 790 NW2d 607 (2010). Furthermore:

> All relevant evidence is prejudicial; only *unfairly* prejudicial evidence may be excluded. *People v McGhee*, 268 Mich App 600, 613-614; 709 NW2d 595 (2005). "Unfair prejudice exists when there is a tendency that evidence with little probative value will be given too much weight by the jury." *Id.* at 614. Unfair prejudice may arise where considerations extraneous to the merits of the case, such as jury bias, sympathy, anger, or shock, are injected. *Id.* [*Danto*, 294 Mich App at 600.]

In this case, the other-acts evidence was offered for the proper purpose of establishing defendant's intent to deliver the methamphetamine in his possession. "Possession with intent to deliver can be established by circumstantial evidence and reasonable inferences arising from that evidence, just as it can be established by direct evidence." *Id.* at 526. "Evidence of intent is relevant because it negates the reasonable assumption that the incident was an accident." *McGhee*, 268 Mich App at 611. Here, defendant's previous possession and delivery of heroin negated the assumption that defendant was simply possessing the methamphetamine for personal use.

The evidence was also relevant. Logical relevance is determined by MRE 401 and MRE 402. "Other-acts evidence is logically relevant if two components are present: materiality and probative value." *People v Denson*, 500 Mich 385, 401; 902 NW2d 306, 316 (2017). "Materiality is the requirement that the other-acts evidence be related to any fact that is of consequence to the action." *Id.* (quotation marks and citation omitted). Evidence has probative value when it "tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id.* at 401-402 (quotation marks and citation omitted). The demonstration is easily satisfied because "any tendency is sufficient probative force." *Id.* (quotation marks and citation omitted). Here, evidence of defendant's prior possessions and deliveries of heroin was probative of defendant's intent in the charge for possession with intent to deliver methamphetamine because it made it more probable than not that defendant intended to deliver the methamphetamine as opposed to using it himself, and it was of the same general category of possession with intent to deliver a controlled substance. See *People v VanderVliet*, 444 Mich 52, 79-80; 508 NW2d 114 (1993) ("When other acts are offered to show intent, logical relevance dictates only that the charged crime and the proffered other acts are of the same general category.").

Finally, the probative value of the proffered other-acts evidence was not substantially outweighed by the danger of unfair prejudice. See MRE 403. Although all relevant evidence is prejudicial, only unfairly prejudicial evidence may be excluded. *Danto*, 294 Mich App at 600. As noted above, evidence of defendant's prior-bad acts of possessing and delivering heroin on two separate occasions was highly relevant to negate the assumption that defendant merely possessed the methamphetamine for personal use. Because the jury was required to determine defendant's

intent, the probative value of the other-acts evidence was not substantially outweighed by a danger of unfair prejudice. Therefore, the trial court's decision to admit the other-acts evidence did not fall outside the range of reasonable and principled outcomes. See *Bergman*, 312 Mich App at 482.

Defendant relies on *People v Crawford*, 458 Mich 376; 582 NW2d 785 (1998), for the contention that there was an insufficient factual nexus between the other-acts evidence and the charged offenses. In *Crawford*, the other-acts evidence was of a 1988 offense in which an officer testified that defendant sold him $5,000 worth of cocaine. *Id*. at 396. The offense for which the defendant stood trial did not involve an act of selling. *Id*. The defendant in *Crawford* "was stopped for a routine traffic violation, which ultimately led to the discovery of cocaine hidden in the dashboard of his car." *Id*. The distinguishing fact in *Crawford* was that there "was evidence at trial that the defendant had purchased the car just five to ten days before his arrest, and that the car had been in the possession of others during that time, lending support to the defense theory that the prior owner or someone else left the drugs in the car, unwittingly or in an attempt to frame the defendant." *Id*. In this case, the other-acts evidence was admitted to demonstrate that defendant had previously possessed and delivered another controlled substance. Unlike *Crawford*, the evidence was not admitted to demonstrate that defendant had "been around drugs in the past and, thus, [was] the kind of person who would knowingly possess and intend to deliver large amounts of [methamphetamine]." *Id*. at 397.

## III. INADMISSIBLE HEARSAY

Next, defendant argues that the trial court erred when it admitted inadmissible hearsay. Defendant specifically takes issue with the testimony of Officer Gray, who testified to out-of-court statements made to him by Oden. According to Officer Gray, Oden told him that Oden believed defendant may have hidden a gun in the back of the vehicle, and that defendant had concealed something else on his person. The statements were, largely, complimentary to Oden's own testimony that he witnessed the gun in the vehicle after defendant fled, although Oden testified he was unsure as to whether defendant had anything else stashed on his person. Defendant notes that it is problematic that Officer Gray's testimony was offered in order to impeach Oden, but yet largely corroborated Oden's testimony. We agree that some of these statements were improperly admitted as impeachment evidence, but also agree with the prosecution that they could have been properly admitted as prior consistent statements.[3]

MRE 801 defines hearsay as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Generally, hearsay is inadmissible. MRE 802. However, hearsay is admissible if one of the enumerated exceptions apply under MRE 803, or the statements are excluded as hearsay under MRE 801(d). Under certain circumstances, prior consistent statements of a witness may be admitted. See MRE 801(d)(1)(B); *People v Jones*, 240 Mich App 704; 613 NW2d 411 (2000).

MRE 801(d)(1)(B) provides that a statement is not hearsay if

---

[3] As previously noted, we review claims of evidentiary error for an abuse of discretion. See *Bergman*, 312 Mich App at 482.

-5-

> [t]he declarant testifies at trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive.

The party offering the prior consistent statement must establish four elements:

> (1) the declarant must testify at trial and be subject to cross-examination; (2) there must be an express or implied charge of recent fabrication or improper influence or motive of the declarant's testimony; (3) the proponent must offer a prior consistent statement that is consistent with the declarant's challenged in-court testimony and, (4) the prior consistent statement must be made prior to the time that the supposed motive to falsify arose.  [*Jones*, 240 Mich App at 707 (quotation marks omitted).]

Again, we agree with both defendant and the prosecution[4] that the hearsay statements made about the gun and defendant's encouragement not to stop for the police should not have been admitted as impeachment evidence. The statements were largely corroborative and not contradictory.  However, to that end, noting that the statements were largely consistent with his testimony, Oden was subject to cross-examination, and there was a clear implication that Oden's testimony may have been improperly influenced after making the prior consistent statements. The prosecution elicited testimony at trial that defendant called Oden and asked Oden not to appear in court, and this is particularly notable in light of the fact that, before Oden admitted the same, Oden's testimony up to that point led him to be warned outside the presence of the jury about the penalties of perjury.  Although the prosecution did not explicitly seek to introduce the statements on the basis of improper influence or motive, our review of the record indicates that the concern certainly existed and the statements were proper in order to dispense of the same.[5]

Moreover, even assuming the statements would have been improper as both impeachment evidence and prior consistent statements, we cannot conclude on the basis of the available record that they were outcome-determinative.  In addition to Officer Gray's testimony, there was also evidence that defendant's DNA was on the gun.  There was testimony that the quantity of defendant's DNA found on the gun would be consistent with him holding the gun and not simply pushing the gun underneath the seat.  There was circumstantial evidence establishing that defendant was a mid-level drug dealer and that dealers of that type typically carry firearms to protect themselves and their drugs.  This made it more likely that defendant stashed the gun in

---

[4] The prosecution agreed in its brief on appeal that the statements concerning the gun should not have been admitted as impeachment evidence.  The prosecution contends that they were admissible nonetheless as prior consistent statements.

[5] As an aside, we note Oden's testimony at trial that he did not know whether defendant had anything stashed on him, and that he did not see anything.  Officer Gray recounted that Oden told him that defendant "was also stashing something but [Oden] didn't see it, the stash was on [defendant's] person though."  This contradictory statement was properly introduced as impeachment evidence.  See MRE 613(b).

Oden's car because defendant knew that he had previous felonies and should not be in possession of a firearm. There was also evidence of defendant's fleeing the car when Oden pulled over, evidence of defendant's blue, puffy jacket linking him to the methamphetamine found near the scene, and Officer Gray's and Oden's testimonies identifying defendant as the individual who fled the car. Accordingly, the admission of Officer Gray's testimony did not undermine the reliability of the verdict. See *Douglas*, 496 Mich at 565-566.

## IV. LIMITING INSTRUCTION

Defendant next contends that the trial court should have given limiting instructions to cure the defects caused by introduction of all of the evidence outlined above. Having concluded that the evidence was properly admitted, a limiting instruction was not necessary. Moreover, we note that defendant never requested a limiting instruction below. "A trial court, *upon request*, may provide a limiting instruction for the proper use of MRE 404(b) evidence." *People v Rice (On Remand)*, 235 Mich App 429, 444; 597 NW2d 843 (1999). However, "in the absence of a request or objection, the appellate courts have declined to impose a duty on trial courts to give sua sponte limiting instructions . . . even if such an instruction should have been given." *Id*. In this case, defense counsel did not request a limiting instruction related to admission of the evidence below.

## V. ADJOURNMENT AND *BRADY* VIOLATION

Defendant also argues that the trial court should have adjourned the trial on the basis of DNA evidence that became available one day before trial, and that the prosecutor committed a *Brady*[6] violation. "This Court reviews the grant or denial of an adjournment for an abuse of discretion. In addition, a defendant must show prejudice as a result of the trial court's abuse of discretion." *People v Snider*, 239 Mich App 393, 421; 608 NW2d 502 (2000) (citation omitted). With respect to alleged *Brady* violations, this Court reviews de novo a defendant's constitutional due-process claim. See *People v Schumacher*, 276 Mich App 165, 176; 740 NW2d 534 (2007). Unpreserved claims are reviewed for plain error affecting substantial rights. See *Carines*, 460 Mich at 763.

With respect to the adjournment, defendant's argument is premised on the fact that the prosecutor became aware of DNA evidence linking defendant to the gun found in Oden's car one day before trial, and defendant was therefore unable to prepare a proper defense. "[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *People v King*, 297 Mich App 465, 473; 824 NW2d 258 (2012) (quotation marks and citations omitted). The record does not support defendant's position that the trial court violated his right to present a defense by failing to grant an adjournment. As the prosecutor and trial court noted, defense counsel became aware in November 2018 that untested DNA evidence existed. Notably, defense counsel never requested an adjournment to wait for the DNA test results. More importantly, defendant has not established what defense, if any, he would have provided the jury to rebut the DNA evidence. See *People v Burwick*, 450 Mich 281, 295; 537 NW2d 813 (1995) (discussing how the defendant could not establish prejudice because there was "no colorable claim that defendant would have proceeded any differently had advance notice been given"). With that

---

[6] *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963).

in mind, we discern no abuse of discretion on the trial court's part, nor prejudice resulting from the failure to adjourn.

We further conclude that no *Brady* violation occurred. In order to establish a *Brady* violation, a defendant must show that "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) viewed in its totality, is material." *People v Chenault*, 495 Mich 142, 155; 845 NW2d 731 (2014). Defendant's argument as to this issue is without merit because the DNA evidence was never suppressed. Rather, both the prosecutor and defense counsel were aware that DNA test results were pending. The record demonstrates that the prosecutor became aware of the results one day before trial, and reached out to defense counsel thereafter.[7] Therefore, the DNA evidence was never suppressed, and defendant's claim that a *Brady* violation occurred must fail.[8]

## VI. CUMULATIVE EFFECT OF ERRORS

Finally, defendant argues that the cumulative effect of the errors requires reversal. Generally, we review the issue of cumulative effect "to determine if the combination of alleged errors denied defendant a fair trial." *People v Knapp*, 244 Mich App 361, 387; 624 NW2d 227 (2001).

> The cumulative effect of several minor errors may warrant reversal even when individual errors in the case would not warrant reversal. In order to reverse on the grounds of cumulative error, the errors at issue must be of consequence. In other words, the effect of the errors must have been seriously prejudicial in order to warrant a finding that defendant was denied a fair trial. [*Knapp*, 244 Mich App at 388.]

As noted above, we discern no evidentiary errors requiring reversal in this case, nor, to the extent that any errors occurred, do we think them outcome-determinative, see *Douglas*, 496 Mich at 565-566, or so serious that they can be said to have denied defendant a fair trial, see *Knapp*, 244 Mich App at 388.

---

[7] We note defendant's assertion that the prosecution was aware that there were multiple DNA contributors on the gun "for at least several months prior to the disclosure of the results." However, there is no evidence in the record demonstrating this knowledge.

[8] We note that defendant moved for a remand with this Court on the basis of additional video evidence that he claimed was concealed by the prosecution. We denied the motion because it is clear that defendant both (1) was provided access to the video evidence, and (2) failed to object to entry of the same at trial.

Affirmed.

/s/ Christopher M. Murray
/s/ Karen M. Fort Hood
/s/ Elizabeth L. Gleicher